37654. GREGOROFF v. THE STATE.

GREGORY, Justice.

Dr. Gregoroff, a specialist in internal medicine, was indicted in Fulton County on three counts of prescribing controlled substances without a legitimate medical purpose in violation of Code Ann. § 79A-820 (f) (3), the Controlled Substances Act, to wit: unlawfully prescribing Preludin without a legitimate medical purpose on November 13, 1979 (Count 1); unlawfullly prescribing Preludin without a legitimate medical purpose on November 26, 1979 (Count 2); and, unlawfully prescribing Parest without a legitimate medical purpose on November 26, 1979 (Count 3). The jury acquitted him on Count 1 and convicted him of Counts 2 and 3. The Court of Appeals affirmed his convictions. See, *Gregoroff v. State,* 158 Ga. App. 363 (280 SE2d 373) (1981). We granted certiorari to determine whether an accused who fails to admit the commission of the crime charged is entitled to an instruction on entrapment where the State injects evidence of entrapment into the case.

The State presented the following evidence at trial.

On August 29, 1979, GBI agent Hoyt Henry, posing as a truck driver, visited Dr. Gregoroff's office. Henry testified at trial that, after he answered a comprehensive medical history questionnaire,

Dr. Gregoroff took a urine sample, checked his weight, heart, respiration and pulse. Dr. Gregoroff cautioned Henry that he was at least 54 pounds overweight. Henry testified that he asked Dr. Gregoroff to give him a prescription for biphetamine, a Schedule II amphetamine, to help him stay awake during cross-country drives, but that Dr. Gregoroff stated he "could not give [him] a prescription for biphetamine for that purpose" nor would he prescribe any "amphetamines for that purpose." After inquiring whether Henry had ever taken Ionamine, Dr. Gregoroff prescribed 30 capsules of this medication to stimulate weight loss. Henry was given a copy of a weight control schedule at this time.

On November 13, 1979 Henry returned to Dr. Gregoroff's office in the company of a GBI informant. The informant, a former patient of Gregoroff's, introduced Henry as her fiance. During the visit agent Henry was wearing a concealed transmitting device. The transcript of the parties' conversation indicates that the informant repeatedly requested a prescription for Dilaudid for herself and a prescription for Desoxyn for Henry. Gregoroff refused these requests three times. Henry subsequently chastized the informant for "badgering" the doctor and offered to trade him a "rare" Smith and Wesson gun for the prescriptions. The doctor again refused. Dr. Gregoroff did agree to prescribe for Henry 30 capsules of Preludin, an amphetamine used in weight control. When Henry protested that he wouldn't "give the gun up for just one prescription," Gregoroff responded that he "wasn't taking" the gun, but that he would charge Henry his normal fee for the office visit. Henry then asked the doctor to buy the gun; Gregoroff offered him $100. After much negotiation, the parties agreed that Dr. Gregoroff would accept the gun in lieu of the office visits of the informant and Henry and in payment of $50 on the informant's overdue account.

On November 26, 1979, Henry returned to Gregoroff's office requesting another prescription for Preludin. The doctor weighed the agent and took his blood pressure. Henry had gained eleven pounds since his initial visit in August, 1979. Gregoroff instructed him that he needed to lose weight. In response to Henry's request for further medication, Gregoroff prescribed 30 capsules of Preludin and also prescribed Parest, a sedative.

Over objection, Henry was permitted to testify that on November 28, 1979 he visited Dr. Gregoroff's home in DeKalb County where the doctor prescribed 50 dosage units of Preludin and 30 dosage units of Demerol.

The State offered the testimony of a medical expert that, in his judgment, there was no legitimate medical purpose for the drugs prescribed on November 13, 1979 and November 26, 1979. However,

on cross-examination, the expert equivocated, stating that he "could not say ... that [these] prescriptions were not for a legitimate medical purpose."

At the close of the State's evidence, Dr. Gregoroff moved for a directed verdict which was denied. The trial court then granted the State's motion to re-open the evidence. The State recalled its medical expert; the expert testified at this time that the normal dosage of Preludin for weight control would be "approximately one to two to three tablets a day," depending on the height, weight and medical history of the patient. He testified that in his opinion the November 13 prescription for 30 dosage units of Preludin would last "at the most, ten days." Over objection, the expert testified that, in his opinion, the November 28 prescription of 50 dosage units of Preludin following the November 26 prescription of 30 dosage units of Preludin was "clearly excessive."

The trial court then denied Gregoroff's renewed motion for directed verdict.

The defense offered testimony of two medical experts who stated that the two prescriptions of Preludin and one prescription of Parest were "appropriate," and, in their judgment, were prescribed for legitimate medical reasons. Twenty-nine witnesses testified to the excellence of Dr. Gregoroff's reputation in the community. In his own behalf Dr. Gregoroff testified that he had prescribed the drugs in question on November 13 and November 26 for legitimate medical reasons. He stated that he had prescribed 30 dosage units of Preludin for agent Henry on November 26 because he felt "with more encouragement" the agent could lose his excess weight. He testified further that he concluded, because of the "stimulating effect" of the Preludin, Henry might need a mild sedative for sleeping and, therefore, he prescribed Parest.

The trial court denied Gregoroff's request to charge on entrapment because Gregoroff "failed to admit the commission of the crime." The Court of Appeals affirmed, finding that since Gregoroff "steadfastly maintained that he issued the prescriptions for legitimate medical purposes, . . . a charge on entrapment [was] not authorized." *Gregoroff v. State,* supra, at 365.

Under Code Ann. § 26-905, "Entrapment exists where the idea and intention of the commission of the crime originated with a government officer or employee, or with an agent of either, and he, by undue persuasion, incitement or deceitful means, induced the accused to commit the act which the accused would not have committed except for the conduct of such officer."

" 'In order to raise the defense of entrapment a defendant

must admit the commission of the crime; but that he did so because of the unlawful solicitation or inducement of a law enforcement agent.' " *Griffin v. State,* 154 Ga. App. 261, 263 (267 SE2d 867) (1980); see also, *Carter v. State,* 140 Ga. App. 208 (230 SE2d 357) (1976).[1]

The rationale for this rule is that it is thought to be factually inconsistent and confusing for a defendant to deny that he committed a criminal act and simultaneously to complain that he was entrapped into its commission.[2] It has also been said that the defense of entrapment "necessarily assumes that the act charged was committed." Hamilton v. United States, 221 F2d 611, 614 (5th Cir. 1955); 22 CJS Criminal Law, § 46.

The rule that a defendant must admit the commission of the crime in order to raise a defense of entrapment is viewed as an exception to the general rule that an accused is permitted to interpose inconsistent defenses in a criminal case.[3] *McKibben v. State,* 115 Ga. App. 598 (155 SE2d 449) (1967). See also, 22 CJS Criminal Law § 54; 21 AmJur2d Criminal Law § 191.

The "inconsistency rule" as it applies to entrapment cases

---

[1] Some commentators have noted that juries tend to be "unresponsive" to the entrapment defense as, in order to raise the defense, "the defendant effectively admits to the commission of the crime though disclaiming responsibility for his actions." "Criminal Procedure — The Entrapment Defense — A Reexamination," 25 Mercer Law Review, 957-967, 960 (1974); see also, "Criminal Law — A Survey and Appraisal of the Law of Entrapment in North Carolina", 54 N. C. Law Review, 982-993 (1976).

Between January 1, 1970 and January 1, 1975 there were 405 reported federal decisions involving the issue of entrapment. Of those, only twenty-seven resulted either in reversals or acquittals because of an entrapment-related error. Roger Park, "The Entrapment Controversy", 60 Minnesota Law Review, 163-274, fn. 44 (1976).

[2] See, Roger D. Groot, "The Serpent Beguiled Me and I (Without Scienter) Did Eat — Denial of Crime and the Entrapment Defense." 1973 University of Illinois Law Forum 254-278; 61 ALR2d 677; United States v. Greenfield, 554 F2d 179 (5th Cir. 1977); United States v. Demma, 523 F2d 981 (9th Cir. 1975); Sears v. United States, 343 F2d 139 (5th Cir. 1965). It should be noted that, while a number of jurisdictions have recited this rule, few have analyzed it or offered an explanation for its basis.

[3] As a practical matter, defendants infrequently rely on inconsistent defenses. But see, *Green v. State,* 7 Ga. App. 803 (68 SE 318) (1910) where the court found it permissible for the defendant to rely upon the defense "that he did not kill the deceased, [but] if he did kill him it was justifiable;" and *Jones v. State,* 232 Ga. 771 (208 SE2d 825) (1974), where the accused defended on the grounds (1) that he had not committed the robbery, but had been present during its commission and (2) that he was in bed asleep with his girl friend at the time of the robbery.

appears to have originated[4] in the case of People v. Murn, 220 Mich. 555 (190 NW 666) (1922). There the defendant was charged with "selling a quart of whiskey." Under the applicable criminal statute the State needed to show only that the accused had made a sale of liquor in order to convict. Testimony of both the defendant and his wife showed that the defendant had been working in a field at the time the wife made the sale to undercover officers. The defendant maintained that he had not made the sale, but that if he did make it, he was entrapped into doing so. The Michigan Supreme Court held that the defendant "is in no position to urge that the act complained of was induced by entrapment of the officers, for he claims he made no sale and did not know of any sale by his wife until after the fact." 190 NW at 666.

After the Murn decision, the rule evolved in a majority of jurisdictions[5] that it was illogical and impermissible for the defendant to deny that he had committed the acts constituting a crime and to simultaneously complain that he had been entrapped by improper governmental conduct into committing the acts.[6]

However, an exception to the rule that an accused must admit the crime in order to rely on the defense of entrapment has been recognized where the State, rather than the defendant, injects evidence of entrapment into the case and the defendant offers no evidence of entrapment which contradicts his primary defense that he did not commit the crime charged. Sears v. United States, 343 F2d 139 (5th Cir. 1965); State v. Knight, 230 SE2d 732 (S. Ct. W. Va.) (1976); 21 AmJur2d, Criminal Law, § 208, p. 382.

In Sears, supra, Judge Bell analyzed the rationale underlying this exception. Where "the government's own case in chief inject[s] substantial evidence of entrapment into the case, the defendant is entitled to raise the defense by motion for acquittal and by requested instruction to the jury. We do not think it is impermissibly inconsistent for a defendant to deny the acts charged, yet urge the court on motion for acquittal that the government's own evidence establishes entrapment as a matter of law. Similarly, the defendant is entitled to have a charge adjusted to the evidence, and if the

---

[4] See Groot, 1973 University of Illinois Law Forum, at 260.

[5] See, Annotation, 61 ALR2d 666, p. 677 et seq.

[6] We note that, in Georgia, the requirement that the accused admit he committed the crime in order to be entitled to a charge on entrapment developed in the common law. Code Ann. § 26-905, supra, which establishes the conditions under which the defense of entrapment may be invoked, does not require the defendant to admit the crime in order to be entitled to the defense.

government injects evidence of entrapment into the case, the defendant is entitled to have the jury instructed that if they find he committed the acts charged, they must further consider whether he was entrapped into committing them. We feel that the ultimate goal of the criminal trial, the ascertainment of truth . . . permits no other course. A criminal defendant should not forfeit what may be a valid defense, nor should the court ignore what may be improper conduct by law enforcement officers, merely because the defendant elected to put the government to its proof." 343 F2d 143-4.

We are persuaded by this reasoning and hold that when the State's case shows evidence of entrapment and the defendant offers no evidence of entrapment inconsistent with his defense that he did not commit the crime, the defendant is not required to admit the commission of the crime in order to be entitled to a charge on entrapment.

In Dr. Gregoroff's case evidence of entrapment was injected into the trial by the State. Dr. Gregoroff admitted the factual allegations of the indictment, i.e., that he prescribed the drugs Preludin and Parest on the dates alleged, while denying the State's conclusion that he had issued the prescriptions unlawfully. Dr. Gregoroff defended on the ground that he had written each of the prescriptions for a "legitimate medical purpose," and, thus, was not guilty of a crime. Dr. Gregoroff's testimony did not offer any evidence of entrapment which would necessarily contradict and disprove his primary defense that he had not committed a crime. We conclude that, under these circumstances, the defendant was entitled to a charge that if the jury found he had not prescribed the drugs for a legitimate medical purpose, they must further consider whether he was entrapped into prescribing them.

*White v. State,* 146 Ga. App. 810 (247 SE2d 536) (1978) aff'd. on other grounds, 243 Ga. 250 (253 SE2d 694) (1979), on which the Court of Appeals relied in determining that Dr. Gregoroff was not entitled to a charge on entrapment, is distinguishable. There the evidence of entrapment came from the defendant's testimony rather than from the State's case, and was inconsistent with White's primary defense that he prescribed the drugs for a legitimate medical purpose.

*Judgment reversed. All the Justices concur, except Marshall, J. who dissents, and Weltner, J., not participating.*

DECIDED JANUARY 5, 1982.

*Robert N. Meals, A. Lee Parks, Jr.,* for appellant.

*Lewis R. Slaton, District Attorney, H. Allen Moye, Margaret V. Lines, Assistant District Attorneys,* for appellee.