## A04A1795. ELLZEY v. THE STATE.
(612 SE2d 77)

PHIPPS, Judge.

After a jury trial, Hubert Kendle Ellzey III was convicted of criminal attempt to traffic in methamphetamine. On appeal, he contends that the court erred in denying his motion for acquittal and in refusing to charge the jury on entrapment. He also contends that the evidence was insufficient to support his conviction and that his trial counsel rendered ineffective assistance. We reverse Ellzey's conviction based on the trial court's failure to charge the jury on entrapment. Because the evidence was sufficient to support the verdict, the case can be retried.[1] Ellzey's claim of ineffective assistance is rendered moot.

At the trial, the state's sole witness was Special Agent Roger Starkey of the Fayette County Drug Suppression Task Force. He testified that beginning on September 9, 2002, a confidential informant (CI) was brought from the jail to help him with a drug investigation. According to Starkey, during a time span of "a couple of hours," the CI telephoned Ellzey "a couple of times" in Starkey's presence using a speaker telephone. The CI "negotiat[ed]" to sell Ellzey a pound of methamphetamine for $12,000, terms set by Starkey based on information from the CI.

Starkey testified that on September 10, the CI again began calling Ellzey in his presence "around lunch time." In "probably the second or third conversation," the CI "renegotiated" the deal to sell Ellzey eight ounces of methamphetamine for $6,000, terms also set by Starkey, because Ellzey was unable to get $12,000 because his bank was closed at the pertinent time. Ellzey agreed to meet the CI, and stated that he would call the CI back because he was then in a meeting. Starkey testified, "[w]e had to initially call him back several times to get him back on the phone." The CI arranged to meet Ellzey at a parking lot, a location chosen by Starkey. Meanwhile, Starkey arranged for additional law enforcement officers to stand by at that location. Starkey recalled that, during one conversation with the CI, Ellzey asked whether he could deliver a money order, rather than cash. Starkey found the question "strange."

According to Starkey, when Ellzey arrived at the parking lot at about 3:00 p.m. on September 10, he went first into a restaurant because he saw a marked police car in the parking lot. When the marked unit left, Ellzey exited the restaurant and sat in a truck with the CI and Starkey. The CI introduced Ellzey and Starkey to each other. Starkey handed Ellzey two ounces of methamphetamine, after

---

[1] See *Lively v. State*, 262 Ga. 510, 512 (3) (421 SE2d 528) (1992).

254

which, Ellzey handed Starkey approximately $6,000 in cash. Starkey then handed Ellzey six ounces of counterfeit methamphetamine and simultaneously gave the standby officers a signal that prompted them to seize Ellzey, the narcotics, and the money. When Ellzey was arrested, he had the two ounces of methamphetamine in one of his pockets.

A recording of the incident, made by a wire Starkey wore during the encounter, was played for the jury. While the tape did not clearly capture all of the conversation, it did show that soon after Ellzey sat in the truck, the men commented that the marked unit had made them apprehensive. Ellzey offered, "Y'all want to get in my car and go down the road?" Starkey declined and then posed the question, "you wanted a half?" The tape recorded Starkey next saying, "Here's a little . . . to look at," asking for the cash, and stating that the "[CI] here will make it back for you." A few seconds later, Starkey asked, "How much you got here?" Ellzey answered, "That should be $5,995." The standby officers then converged upon the scene.

Ellzey's evidence consisted of his own testimony and that of a character witness. Ellzey denied purchasing drugs, denied coming to the parking lot to purchase drugs, and claimed that he went to the parking lot only to lend $6,000 to someone he now realizes was a CI. Ellzey had met the CI through a friend, who was being supplied methamphetamine by the CI. Ellzey's friend had introduced Ellzey to methamphetamine, and the two had used the drug together about four or five times over a period of about three or four months. Ellzey further testified that he had never sold the drug and that his use of the drug had ended "well over a year ago."[2]

Ellzey claimed that prior to September 9, 2002, the CI had placed calls to him asking him either to purchase drugs or to lend him money. On September 9, the CI's calls had been about borrowing money. The CI had promised to pay back half the money that same day or the next day. Ellzey testified that, although the CI did not state that he planned to use the money to purchase drugs, "I had a good idea that that's what he was doing with it." According to Ellzey, the CI called him about five or six times that day; each call lasted about five or ten minutes. Ellzey recounted,

> I was scared. I didn't know what to do to back out. I tried coming down to $3500 on the money and I just wasn't getting anywhere. He was continuing to call me and harass me and I felt that if I didn't loan him the money that he could do

---

[2] The trial was held in September 2003, and the incident underlying the instant case occurred in September 2002.

harm to me or my family or my business. He did say one time that if anybody had ever went against him that he would pop a cap in them.

Ellzey testified that he feared in addition that the CI would use his knowledge of Ellzey's methamphetamine use to interfere with Ellzey's then ongoing child custody dispute. For these reasons, Ellzey had agreed to meet the CI with $6,000 and give it to him as a loan. The CI had told Ellzey that he would be sitting in a white truck at the parking lot with his "boss man." Ellzey explained that he had gotten into the truck because, "I didn't want to pull the money out in public." Once Ellzey was inside the truck, the CI introduced Starkey to him as "the man." When Starkey asked him whether he had the money, he passed Starkey approximately $6,000. Ellzey recalled Starkey saying that he "had something he wanted me to look at." Ellzey continued, "And he reached around to the left-hand side and he had something in his hand. And it had a piece of — like a napkin over the top of it. And I reached my hand out. And as he went to sit it in my hand he pulled the napkin off." Ellzey recognized it as methamphetamine. He testified, "I really didn't know [why Starkey was showing methamphetamine to me]. I just assumed at that point, because that went back to when [the CI] told me that he would be able to pay half of the money back to me by that afternoon or the next day — that's when I had a good idea that he was going to take the money and buy drugs with it." Ellzey repeatedly testified, however, that he had not gone to the parking lot to purchase any drug. Further, he explained, he had invited the men to get into his vehicle, "because I wasn't sure if they had drugs in the car. And I was paranoid to the fact because I thought that there could possibly be drugs in [their] vehicle, and I wanted [the CI] to get in my vehicle where we could talk."

Ellzey's character witness, who had known him for 25 years, testified that Ellzey was an honest man.

After the defense rested, defense counsel sought a directed verdict of acquittal, arguing that the evidence proved that Ellzey had been entrapped. The court denied the motion, remarking that such an affirmative defense required Ellzey to admit the crime, but that Ellzey's defense was denial of committing the crime. Based on the same reasoning, the court later refused to give Ellzey's written request to charge the jury on entrapment.

1. Ellzey contends that, under *Gregoroff v. State*,[3] the trial court was required to charge the jury on entrapment.

---

[3] 248 Ga. 667 (285 SE2d 537) (1982).

As a general rule, to raise the affirmative defense of entrapment, a defendant must first admit that he committed the crime and then show that he did so because of the unlawful solicitation or inducement of a law enforcement officer.[4] "The rationale for this rule is that it is thought to be factually inconsistent and confusing for a defendant to deny that he committed a criminal act and simultaneously to complain that he was entrapped into its commission."[5] Ellzey correctly points out that in *Gregoroff v. State*,[6] the Supreme Court of Georgia held that

> when the State's case shows evidence of entrapment and the defendant offers no evidence of entrapment inconsistent with his defense that he did not commit the crime, the defendant is not required to admit the commission of the crime in order to be entitled to a charge on entrapment.[7]

Entrapment consists of three distinct elements: "(1) the idea for the commission of the crime must originate with the state agent; (2) the crime must be induced by the agent's undue persuasion, incitement, or deceit; and (3) the defendant must not be predisposed to commit the crime."[8]

As to the first element, Ellzey cites Starkey's testimony that the telephone calls between the CI and Ellzey were originated by the CI and that Starkey (through the CI) had been the one who proposed the terms of the drug deal. Plainly, there was evidence that the idea for the commission of the crime originated with the state agent.

As to the remaining two elements, Ellzey cites the state's evidence that on two consecutive days, Starkey brought from jail a CI who repeatedly called him asking him to bring a large amount of cash to a certain location. In addition, Ellzey cites his own testimony that he had initiated no telephone calls to the CI, that the CI was harassing and threatening, that he had not come to the parking lot to purchase drugs, and that the CI had accomplished getting him to that location with $6,000 only under the guise of needing to borrow money. Ellzey further cites his inquiry about delivering a money order, claiming that it showed that he was "clueless" about a pending drug transaction and pointing out that even Starkey found the request "strange" for a drug purchase. Ellzey argues that, with this evidence,

---

[4] See id. at 669-670; *St. Jean v. State*, 255 Ga. App. 129, 130 (564 SE2d 534) (2002).

[5] (Footnote omitted.) *Gregoroff*, supra at 670; see *St. Jean*, supra.

[6] Supra.

[7] Id. at 672.

[8] (Citation and punctuation omitted.) *Hill v. State*, 261 Ga. 377 (405 SE2d 258) (1991); see also OCGA § 16-3-25.

he was entitled to a charge on entrapment because it amounted to a sufficient showing of (a) undue persuasion, incitement, or deceit, and (b) a lack of predisposition on his part to commit the crime.

Only "slight evidence" is required to authorize a charge on a subject.[9] "The evidence necessary to justify a jury charge need only be enough to enable the trier of fact to carry on a legitimate process of reasoning."[10] Whether the evidence is sufficient to authorize the giving of a charge is a question of law.[11] "If an affirmative defense is raised by the evidence, including the defendant['s] own statements, the trial court must present the affirmative defense to the jury as part of the case in its charge, even absent a request."[12] An affirmative defense need not be specifically charged, however, "if the case as a whole is fairly presented to the jury."[13]

One of Ellzey's defenses was that he was entrapped. Although that defense may have been strongly controverted by some of the evidence presented, "[t]he judge cannot arbitrarily reject the defense theory raised by the accused's testimony as unworthy of belief and refuse to charge upon the issue raised."[14] "In determining whether some evidence exists to support an instruction, an appellate court is not authorized either to weigh existing evidence or to judge witness credibility as these matters are within the province of the jury."[15] Notwithstanding the evidence authorizing rejection of an entrapment defense, there was evidence that would have enabled the trier of fact to carry on a legitimate process of reasoning regarding whether Ellzey had been entrapped.[16] The record reveals, however, that the jury charges failed to present that defense. By omitting such a charge, the court invaded the province of the jury as the trier of fact by limiting its consideration of the case.[17] Failure to charge on entrapment was therefore reversible error,[18] and Ellzey's conviction is reversed.

---

[9] *Koritta v. State*, 263 Ga. 703, 704 (438 SE2d 68) (1994).

[10] (Citation omitted.) Id. at 704-705.

[11] *Davis v. State*, 269 Ga. 276, 279 (3) (496 SE2d 699) (1998).

[12] *Booker v. State*, 247 Ga. 74 (274 SE2d 334) (1981).

[13] (Citation omitted.) Id.

[14] (Citations and punctuation omitted.) *Owens v. State*, 173 Ga. App. 309, 313 (5) (326 SE2d 509) (1985).

[15] (Citation omitted.) *Jones v. State*, 220 Ga. App. 784, 785 (470 SE2d 326) (1996).

[16] See *Gregoroff*, supra at 672; see also *Overstreet v. State*, 250 Ga. App. 336, 337-338 (1) (551 SE2d 748) (2001) (jury is authorized to "believe or disbelieve all or any part of the testimony of witnesses"). Compare, e.g., *Harold v. State*, 185 Ga. App. 481, 482 (1) (364 SE2d 615) (1988).

[17] See *Williams v. State*, 209 Ga. App. 355, 356 (433 SE2d 361) (1993).

[18] See *Gregoroff*, supra; *Booker*, supra; *Hinton v. State*, 236 Ga. App. 140, 141 (511 SE2d 547) (1999); *Williams*, supra at 356 (2).

2. Ellzey maintains that the evidence proved that he was entrapped into committing the crimes. Therefore, he contends that the court erred in denying his motion for directed verdict of acquittal. In a separate claim of error, he contends that the evidence was insufficient to sustain his conviction.

The standard for reviewing the denial of a motion for a directed verdict of acquittal and for considering the sufficiency of the evidence is the same.[19] We view the evidence in the light most favorable to the verdict, and Ellzey no longer enjoys the presumption of innocence.[20] We do not weigh the evidence or determine whether a witness is credible, but only determine whether the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Ellzey was guilty of the crime.[21]

Any person who "knowingly sells, delivers, or brings into this state or has possession of 28 grams or more of methamphetamine . . . commits the felony offense of trafficking in methamphetamine. . . ."[22] A person commits the criminal attempt of a crime when that person performs any act which constitutes a substantial step toward the commission of the crime.[23]

Contrary to Ellzey's challenges to the sufficiency of the evidence, when viewed to uphold the jury's verdict, the evidence would not have demanded a finding of entrapment even if an entrapment charge had been given.[24] Although Ellzey claims that his testimony that the CI was threatening went unchallenged because the CI did not testify, "there is no per se rule that a defendant is entitled to a directed verdict where the informant is not called to rebut the defendant's testimony of entrapment."[25] Furthermore, the evidence was sufficient to sustain Ellzey's conviction.[26]

3. Ellzey contends that his trial counsel was ineffective, arguing that he was unsuccessful at procuring a charge on entrapment because he failed to cite *Gregoroff v. State*.[27] Division 1 renders this contention moot.

*Judgment reversed. Johnson, P. J., and Smith, P. J., concur.*

---

[19] *Garrett v. State*, 184 Ga. App. 715, 716 (3) (362 SE2d 423) (1987).

[20] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[21] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[22] OCGA § 16-13-31 (e).

[23] OCGA § 16-4-1.

[24] See *Evans v. State*, 209 Ga. App. 340 (433 SE2d 426) (1993).

[25] (Punctuation and footnote omitted.) *Urapo-Sanchez v. State*, 267 Ga. App. 113, 115 (1) (598 SE2d 850) (2004).

[26] See id. at 115-116; *Harris v. State*, 258 Ga. App. 669, 670 (574 SE2d 871) (2002); see also *Jackson v. Virginia*, supra.

[27] Supra.

DECIDED MARCH 17, 2005.

Maloy & Jenkins, James K. Jenkins, Walker L. Chandler, for appellant.

William T. McBroom, District Attorney, Jamie K. Inagawa, Assistant District Attorney, for appellee.