## A06A2210. MALDONADO v. THE STATE.
## A06A2211. MARTINEZ v. THE STATE.
(643 SE2d 316)

BERNES, Judge.

The defendants appeal their convictions for trafficking in cocaine. Each appellant enumerates different errors, but the factual background and transaction which gave rise to both convictions are the same and therefore the appeals shall be addressed together.

Viewed in the light most favorable to upholding the jury's guilty verdicts, the evidence presented at trial showed that appellant Jesus Maldonado and Alejandro Ramirez became friends when they worked together as migrant laborers several years prior to the transaction forming the basis for this appeal. In November 2000, Ramirez was caught with nearly 450 pounds of marijuana and was charged with various violations of the Georgia Controlled Substances Act. He subsequently agreed to work as an informant with the Georgia Bureau of Investigation ("GBI") and to arrange sales of "[b]ig amounts of cocaine [or] big amounts of marijuana" in an effort to help himself.

In late December 2001, Ramirez contacted Maldonado, who was then living in Dothan, Alabama, via Maldonado's cell phone. In a telephone conversation made from the Savannah GBI office, Ramirez advised Maldonado that he was trying to raise money for his attorney fees and was looking to purchase up to five kilograms of cocaine for sale to an unnamed customer. Maldonado indicated that he would try to supply Ramirez with the drugs.

Throughout the end of December 2001 and the beginning of January 2002, at least six additional telephone conversations, all of which were recorded, took place between Ramirez and Maldonado. During the conversations, the two men discussed Maldonado's ongoing efforts to obtain the cocaine.[1] Maldonado believed that he would only be able to supply Ramirez with up to three kilograms. In accordance with the instructions from the GBI agent with whom he was working, Ramirez informed Maldonado that his customer lived on Jekyll Island and instructed him that the exchange would need to take place in or around Brunswick, Georgia.

On January 7, 2002, Maldonado notified Ramirez that he expected his supplier to arrive with the cocaine that evening and informed him that he and the supplier would leave to drive to Ramirez's house the following day. Maldonado and appellant Oscar Martinez arrived at Ramirez's house in Reidsville, Georgia, on the morning of January 9, 2002 at which time Maldonado informed

---

[1] The two men conversed in Spanish. The recordings were translated into English and read to the jury at trial.

Ramirez that he had three kilograms of cocaine. Ramirez's wife contacted the GBI agent and notified him that Maldonado and another Hispanic male had arrived in "a maroonish-pink-in-color Chevrolet step-side pickup truck" with Alabama license plates. Ramirez instructed the appellants to follow his vehicle to Brunswick along a route that had been predetermined by the GBI agent.

The GBI agent worked with local law enforcement officials to set up a roadblock on Highway 301 in Long County, Georgia, in order to intercept the appellants' vehicle. On the way to the roadblock, the GBI agent passed and observed Ramirez's vehicle being followed by the appellants' vehicle. Shortly after the agent arrived at the road-block, a local officer notified him that a vehicle matching the appellants' description had turned onto a side street north of the roadblock.

Believing that the appellants' vehicle had turned onto a street called Johnson Circle, the GBI agent and other local officers proceeded down that road but failed to locate the appellants. As they were returning to Highway 301, another local officer notified the GBI agent that he had just passed a vehicle matching the appellants' description on the street immediately north of Johnson Circle, on a private driveway called Nanie's Lane. The appellants were ultimately stopped approximately one mile north of Nanie's Lane after they pulled back onto Highway 301 going in the direction opposite the roadblock.

Maldonado admitted that he was driving without a valid license and consented to a search of the vehicle. No cocaine was found. However, the officers subsequently found a laundry detergent box sitting on the edge of the woods off Nanie's Lane. Drug dogs were brought to the scene and alerted to both the appellants' vehicle and the laundry box. Three large blocks of cocaine in individual bags were found in the box beneath the laundry detergent. The laundry box itself was processed for fingerprints and the crime laboratory later identified a latent print as that of appellant Martinez.

Following a jury trial, Maldonado was convicted of one count of trafficking in cocaine, use of a communication facility in the commission of a crime, and an improper turn. Martinez was convicted of one count of trafficking in cocaine.

### Case No. A06A2210

1. Maldonado argues that the state failed to prove venue on the unlawful use of a communication facility count. See OCGA § 16-13-32.3. We agree. The indictment alleged that Maldonado, "in the County of LONG and the State of Georgia . . . did knowingly use a communication facility, to wit: a cellular telephone, in facilitating the commission of an act constituting a felony." The state failed to set

forth any evidence that Maldonado used his cellular telephone in Long County. Maldonado's conviction for the unlawful use of a communication facility must therefore be reversed. See *Jones v. State*, 272 Ga. 900, 901-902 (2) (537 SE2d 80) (2000).

2. Maldonado next contends that the trial court erred in denying his motion to suppress evidence seized as a result of the search of his car and person. Maldonado does not specify what evidence he contends should have been suppressed, but we note that the cocaine was found abandoned in a wooded area and that Maldonado lacks standing to contest the seizure of this evidence.[2] See *Gray v. State*, 254 Ga. App. 487, 488 (1) (562 SE2d 712) (2002); *State v. Clark*, 263 Ga. App. 480, 484-485 (b) (588 SE2d 254) (2003).

In support of his argument, Maldonado asserts that there was no probable cause for the stop and subsequent warrantless search of his person and his vehicle. First, we note that, "[a]n officer needs only reasonable, articulable suspicion of criminal conduct, not probable cause, to initiate an investigative stop." (Citation omitted.) *Steed v. State*, 273 Ga. App. 845, 847 (1) (616 SE2d 185) (2005). We nevertheless have no hesitancy in concluding, as did the trial court in this case, that the stop and subsequent search of the vehicle was supported by probable cause. "Probable cause . . . exists where, based on objective facts and circumstances, a man of reasonable caution would believe that a crime has been or is being committed." (Citation omitted.) *Williams v. State*, 251 Ga. 749, 792 (8) (a) (ii) (312 SE2d 40) (1983), superseded by statute on other grounds as discussed in *Price v. State*, 269 Ga. 222 (498 SE2d 262) (1998). "Probable cause need not be defined in relation to any one particular element, but may exist because of the totality of circumstances surrounding a transaction." (Citation and punctuation omitted.) *Norman v. State*, 214 Ga. App. 408, 409 (448 SE2d 219) (1994).

Here, contrary to Maldonado's allegations, the officer's decision to stop his vehicle was based upon more than untested information provided by an unreliable informant. His decision was "based [upon] the collective knowledge of all the police officers engaged in [the] joint investigation." (Footnote omitted.) *Noble v. State*, 283 Ga. App. 81, 83 (1) (640 SE2d 666) (2006). The GBI agent that requested the roadblock had been provided and had heard the recorded conversations between Maldonado and the informant which detailed the plans for the drug exchange. He had also received a telephone call from Ramirez's wife on the morning of the arrest notifying him that Maldonado and a second Hispanic male had arrived with the drugs

---

[2] Maldonado's cellular phone was seized from the car and drug dogs alerted to the door of his vehicle.

and that they would be following Ramirez in a maroon, step-side truck to Brunswick via the predetermined route. The GBI agent corroborated this information when he passed the two vehicles in tandem on route to the roadblock. Finally, an officer operating the roadblock observed Maldonado's vehicle turn in order to evade the roadblock. These facts taken collectively provided probable cause for the stop and subsequent search of Maldonado's vehicle. See *Archer v. State*, 217 Ga. App. 395, 396 (457 SE2d 679) (1995) (confirmed tip from informant of previously unconfirmed reliability provided police with probable cause to effectuate an investigatory stop and warrantless search of defendant's moving vehicle). Compare *Vansant v. State*, 264 Ga. 319, 321 (2) (443 SE2d 474) (1994); *McSwain v. State*, 240 Ga. App. 60, 61-62 (522 SE2d 553) (1999). The search of Maldonado himself was authorized as incident to his arrest for driving without a license. *Edge v. State*, 269 Ga. App. 88, 89 (603 SE2d 502) (2004).

Since Maldonado turned his vehicle around prior to reaching the roadblock, his challenge to the roadblock's constitutionality need not be reached by this Court. *Powell v. State*, 270 Ga. App. 707, 707-708 (607 SE2d 909) (2004). Likewise, the finding of probable cause set forth above obviates the need for this Court to address Maldonado's arguments as to whether the officer was authorized to stop him based solely upon his failure to use a turn signal.[3]

3. Maldonado next challenges the trial court's failure to grant a mistrial based upon the state's introduction of testimony that he alleges amounted to improper character evidence and/or evidence of unproven past crimes without proper notice. Specifically, he asserts error in the admission of Ramirez's testimony that he had previously sold marijuana to Maldonado and discussed with him the sale of cocaine.

Even if we assume the challenged evidence was relevant to the issues at trial, it was nevertheless inadmissible because of the state's failure to comply with the notice and hearing requirements of Uniform Superior Court Rule 31.3.[4] See *Baptiste v. State*, 190 Ga. App. 451, 452 (1) (379 SE2d 165) (1989). However, "harm as well as error must be shown to authorize a reversal by [the] court." (Citation and punctuation omitted.) Id. at 453 (1). In view of the overwhelming

---

[3] Maldonado also enumerates as error the trial court's failure to grant a new trial on the charge of failing to employ a turn signal and in failing to charge the jury that a hand signal could be employed. However, these enumerations are not supported by argument or citations to authority and are therefore deemed abandoned. See Court of Appeals Rule 25 (c) (2).

[4] Maldonado was given oral notice of the state's intent to introduce the testimony prior to opening statements. The state contends the challenged evidence was relevant to explain Ramirez's conduct in initially contacting Maldonado for the purpose of arranging a sale of cocaine.

evidence of Maldonado's guilt, it is highly probable that the error did not contribute to the judgment. Id.; *Crawford v. State*, 230 Ga. App. 568 (497 SE2d 45) (1998).

4. In his final enumeration of error, Maldonado contends that the trial court erred in refusing to charge on the defense of entrapment. Maldonado's counsel expressly abandoned this enumeration at the hearing on his motion for a new trial, and it is therefore questionable whether this issue has been preserved for review on appeal. See *Vincent v. State*, 276 Ga. App. 415, 417 (3) (623 SE2d 255) (2005). Compare OCGA § 5-5-40 (g). We nevertheless conclude that an entrapment charge was not authorized by the evidence at trial.

> As a general rule, in order to raise an entrapment defense[,] the defendant must first admit that he committed the crime and then show that he did so because of unlawful inducement by a law enforcement officer. However, if the state's case shows evidence of entrapment and the defendant offers no evidence of entrapment inconsistent with his defense that he did not commit the crime, then he is not required to admit the commission of the crime in order to be entitled to an entrapment jury charge.

(Footnotes omitted.) *Flores v. State*, 277 Ga. App. 211, 213-214 (4) (626 SE2d 181) (2006).

In the instant case, Maldonado did not admit the crime and the state's evidence did not show entrapment. "Entrapment consists of three distinct elements: (1) the idea for the commission of the crime must originate with the state agent; (2) the crime must be induced by the agent's undue persuasion, incitement, or deceit; and (3) the defendant must not be predisposed to commit the crime." (Punctuation and footnote omitted.) *Ellzey v. State*, 272 Ga. App. 253, 256 (1) (612 SE2d 77) (2005). While there was evidence that the idea for the crime originated with the informant, there was no evidence that Maldonado was persuaded by or that the informant used any "undue persuasion, incitement, or deceit." (Punctuation and footnote omitted.) Id. Accordingly, the trial court did not err in failing to charge the jury on entrapment.

### Case No. A06A2211

5. In two separate enumerations of error, Martinez claims that the evidence against him was insufficient to support his conviction for trafficking in cocaine. He argues that the only evidence connecting him to the cocaine was the single fingerprint found on the laundry detergent box. We disagree.

On appeal, Martinez no longer enjoys the presumption of innocence. *Davis v. State*, 281 Ga. App. 855 (637 SE2d 431) (2006). Viewed in the light most favorable to the jury's verdict, the jury was entitled to infer from the tape recorded conversations between Ramirez and Maldonado that Martinez was the supplier of the cocaine that was to be delivered to Ramirez. In more than one conversation, Ramirez and Maldonado referred to the fact that the man who was supplying the cocaine would accompany Maldonado to Ramirez's house. The day after Maldonado notified Ramirez that his supplier had arrived, Maldonado and Martinez showed up at Ramirez's house, where Maldonado announced that they had the cocaine. Martinez was with Maldonado when he was following Ramirez to Brunswick, when he turned to avoid the roadblock, and when the laundry detergent box was left in the woods off Nanie's Lane. Martinez could not produce any form of identification to the police, and while he stated that he was from Houston, Texas, he could not provide his home address nor the name, address, or phone number of the company that he worked for. This evidence, in conjunction with the fingerprint evidence, was sufficient to support Martinez's conviction. See *Sharpe v. State*, 213 Ga. App. 280, 282 (1) (444 SE2d 600) (1994) (while mere presence at a crime scene is insufficient to support a conviction, "presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred") (citations and punctuation omitted). See also *Murphy v. State*, 272 Ga. App. 287, 289 (2) (612 SE2d 104) (2005); *Martinez v. State*, 259 Ga. App. 402 (1) (577 SE2d 82) (2003).

6. Our holding in Division 2 above that the arresting officer had probable cause to stop Maldonado's vehicle controls Martinez's assertion of error as to the trial court's denial of his motion to suppress evidence seized as a result of the stop. Martinez raises the same arguments as Maldonado and we therefore need not readdress that issue here.

7. Martinez next challenges the trial court's order denying his motion to exclude the state's fingerprint analysis and expert testimony, asserting that fingerprint evidence is not sufficiently reliable so as to satisfy the test for determining the admissibility of scientific procedures under Georgia law.[5] However, the use of fingerprint evidence is widely used in Georgia courts, and the Supreme Court of Georgia has previously found the evidence both reliable and admissible. See *Whatley v. State*, 270 Ga. 296, 299 (6) (509 SE2d 45) (1998);

---

[5] Martinez cites *United States v. Plaza*, 188 FSupp.2d 549 (E.D. Pa. 2002) in support of his position. We note that, although the *Plaza* court originally called into question the reliability of fingerprint evidence, on reconsideration, the court reversed its decision. Id. at 576.

*Dailey v. State*, 271 Ga. App. 492, 496 (3) (610 SE2d 126) (2005). Martinez's assertion that the fingerprint evidence was improper is without merit.

8. Martinez next argues that the trial court erred in denying his motion to sever. The determination of whether severance is warranted rests in the sound discretion of the trial judge. OCGA § 17-8-4 (a). In making this determination, the trial court should consider (1) whether the number of defendants creates confusion as to the evidence and the law applicable to each; (2) whether there is a danger that the evidence admissible against one defendant will be considered against the other despite the court's instructions; and (3) whether the defendants' defenses are antagonistic to each other or to each other's rights. *Ellis v. State*, 164 Ga. App. 366, 369 (6) (296 SE2d 726) (1982). "The defendant seeking severance must do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing of prejudice and a consequent denial of due process." (Citation and punctuation omitted.) *Jones v. State*, 225 Ga. App. 673, 676-677 (4) (484 SE2d 702) (1997).

In the instant case, there were only two defendants and the charges and evidence against each defendant were not so complex so as to raise a danger of confusion by the jury. Although Martinez claims that the majority of the evidence admitted against Maldonado was not applicable to himself, "[t]he fact that the evidence as to one of two co-defendants is stronger does not demand a finding that denial of a motion to sever is an abuse of discretion, where there is evidence showing they acted together." (Citation omitted.) *Whitehead v. State*, 237 Ga. App. 551, 552 (2) (515 SE2d 866) (1999).

And while Martinez claims that he was merely an innocent passenger in Maldonado's vehicle and that his defense was antagonistic to that of Maldonado, "the existence of antagonistic defenses, standing alone, is not sufficient to require a severance." *Wicks v. State*, 278 Ga. 550, 551 (3) (604 SE2d 768) (2004). Neither appellant testified or presented additional evidence at trial or otherwise made any inculpatory statements against the other to law enforcement. Indeed, Maldonado told the officer who stopped his vehicle that they were in the area looking for work for Martinez. Martinez failed to make the requisite showing that his case needed to be severed or that he was prejudiced by the denial of his severance motion. See *Redding v. State*, 239 Ga. App. 718, 721 (4) (521 SE2d 840) (1999); *Randolph v. State*, 198 Ga. App. 291, 292 (3) (401 SE2d 310) (1991).

9. In his fifth enumeration of error, Martinez contends that the trial court erred when it declined to declare a mistrial upon the state's displaying of three separate blocks of cocaine to the jury when only one block had been weighed and tested by the crime laboratory. This Court has previously held that "the testing of representative samples

is sufficient to support a conviction for trafficking in the entire amount." (Footnote omitted.) *Castillo v. State*, 263 Ga. App. 772, 773 (1) (589 SE2d 325) (2003).

Nonetheless, Martinez was convicted and sentenced under OCGA § 16-13-31 (a) (1) (C) for knowingly possessing 400 grams or more of cocaine or any mixture of cocaine with a purity of ten percent or more. The quantity of cocaine that was weighed and tested by the laboratory expert amounted to 982.14 grams of cocaine of 63.7 percent purity and was thus alone sufficient to sustain the conviction. Furthermore, the jury was told to disregard the evidence of the additional cocaine that had not been tested. In light of the large amount of substantiated cocaine and the court's directive, any error, to the extent one existed, was harmless. See *McCoy v. State*, 190 Ga. App. 258, 261 (4) (378 SE2d 888) (1989).

10. Martinez next claims that his constitutional rights were violated in that he did not receive effective assistance of counsel. In order to prove ineffective assistance, Martinez "must overcome the strong presumption that defense counsel's conduct falls within the broad range of reasonable professional conduct." (Citation omitted.) *Gilbert v. State*, 208 Ga. App. 258, 263 (4) (430 SE2d 391) (1993). He must show not only that his counsel's performance was deficient, but also that this deficiency prejudiced his defense. Id. "The test is whether there is a reasonable probability the jury would have reached a different verdict, absent the error of counsel." (Citation omitted.) Id. at 263-264 (4).

(a) Martinez's first argument that his counsel was deficient due to divided loyalties between himself and Maldonado completely lacks merit, most obviously because Martinez and Maldonado were represented at trial by separate counsel. Indeed, Martinez's counsel testified at the new trial hearing that although both defendants expressed the desire that he represent them jointly, he made it clear that dual representation was not feasible and he therefore contacted co-counsel to represent Maldonado. He also explained that any money that he had received from Maldonado was provided for and was given to co-counsel. The record therefore provides no evidence of conflict or divided loyalties.

(b) Martinez next argues that his counsel was ineffective for failing to adequately meet with him in preparation for the trial and for not providing a Spanish interpreter during the meetings. While "there exists no magic amount of time which a counsel must spend in preparation for trial in order to provide a client with adequate counsel," Martinez's counsel testified that he met with Martinez an estimated eight to twelve times at the jail in preparation for trial. *Hand v. State*, 205 Ga. App. 467, 469 (2) (422 SE2d 316) (1992). He also testified that, although he did not bring a certified interpreter

with him, Martinez's wife or Maldonado were always there to translate. Martinez never indicated that they were having trouble communicating and his counsel never had any reason to believe that their conversations were not being accurately translated. Accordingly, Martinez has failed to show that his counsel's performance was deficient in this regard and has further failed to show how the deficiencies impacted the ultimate outcome of the trial.

(c) Lastly, Martinez asserts that his counsel was ineffective for failing to object to the admissibility of the laundry detergent box and the enlarged photo of the fingerprint found on the box. However, he fails to include any support or authority for his proposition that the evidence was objectionable. We therefore deem the argument abandoned. Court of Appeals Rule 25 (c) (2); *Kendrick v. State*, 269 Ga. App. 831, 835 (7) (605 SE2d 369) (2004). Nevertheless, our review of the record persuades us that Martinez's counsel was well-versed in both the facts and the law applicable to the case and made strenuous and persuasive objections throughout the trial when appropriate. Ramirez has failed to show that his performance was deficient or that the outcome of the trial would have been different had he been provided other counsel.

*Judgment affirmed in part and reversed in part. Barnes, C. J., and Andrews, P. J., concur.*

DECIDED MARCH 7, 2007.

*Donald O. Nelson*, for appellant (case no. A06A2210).
*Earle J. Duncan III*, for appellant (case no. A06A2211).
*Tom Durden, District Attorney, Mark A. Hendrix, Assistant District Attorney*, for appellee.