## A10A1228. GRAHAM v. THE STATE.

(700 SE2d 863)

MIKELL, Judge.

After a jury trial, Charles Douglas Graham was convicted of sale of cocaine and two counts of sale of 3,4-methylenedioxymethamphetamine (ecstasy). On appeal, Graham raises the single enumeration of error that his convictions should be reversed because the trial court refused his request to charge the jury on the defense of entrapment.

Construed in favor of the verdict, the evidence shows that Officer Andy Smith of the City of Gainesville Police Department testified that he and another officer visited Christopher Rivera Sanchez ("Rivera") at his home in June 2007 and asked him to work for the police as a confidential informant, after learning that Rivera had been arrested for possession of a sawed-off shotgun and was a member of BOE 23, a street gang. Smith told Rivera that if he provided information about the gang, or purchased guns, stolen items, or drugs from someone in the gang, Smith would talk to the district attorney about Rivera's case and ask that a lighter sentence be imposed on Rivera's gun charge. Smith maintained that no one ever offered to dismiss Rivera's charge or threatened to add more charges to coerce him into participating.

Smith recalled that Rivera brought up Graham's name, which piqued the officers' interest because they knew that Graham was the leader of BOE. Rivera told them that on the day that he was arrested on the gun charge, Graham had 60 ecstasy tablets in his possession. Smith asked Rivera if, he could buy some ecstasy tablets from Graham, and Rivera said he would try. Smith left his business card with Rivera. Later on that same day, Rivera called Smith and told him that he could buy a gun from Graham. Rivera also told the officers that Graham was holding a meeting at a mobile home park to discuss having different leaders in the gang represent different territories in Hall County.

Rivera initiated the next contact with the police when he called Smith and said that he would get information for him; and several phone calls between the police and Rivera ensued. Smith testified that during the course of his investigation, he recorded phone conversations between Rivera and Graham. Smith testified that he instructed Rivera to call Graham, but that he could hear only Rivera's portion of the conversations, and that Rivera told him what Graham said about how much money would be required and where the transactions would occur. Smith further testified that during one of the calls, Rivera told Graham that the pills were at Rivera's home and that Graham should ask Rivera's brother where they were. But Smith testified that the police still proceeded with the investigation

against Graham, because it was clear that Graham would profit from the proceeds of the drug sale, as evidenced by Graham's statement during the call that he needed 300 pills to "come back up," which meant to purchase more pills to sell. Smith acknowledged during cross-examination that there were calls between Rivera and Graham that he did not record.

The evidence showed three drug transactions between Rivera and Graham. The first drug transaction took place on June 13, 2007. Rivera met with the officers at the police station, where he was wired with surveillance equipment that included a small camera, and was given $330 to purchase ecstasy pills from Graham. The officers drove Rivera to his apartment, which is where the drug transaction was to occur. Rivera was instructed to purchase the pills and then return to the waiting police vehicle. Prior to the transaction, the officers had searched Rivera to ensure that he had no contraband on his person. The transaction occurred within a few minutes, and Rivera returned to the officers, who deactivated the recording device. Rivera gave the officers the 29 tablets he purchased from Graham. Smith performed a field test on the tablets, which tested positive for ecstasy.

Smith met with Rivera again on June 20, 2007, at the Gang Task Force office. The same procedure was followed. The surveillance equipment was placed on Rivera, and he was provided with $240. This transaction also occurred in Rivera's apartment, and Rivera returned to the police vehicle with 20 tablets, which tested positive for ecstasy. The recording device was deactivated once Rivera entered the police vehicle after the controlled purchase had been completed.

On July 4, 2007, Smith met Rivera at the Gang Task Force office. After the surveillance equipment was placed on him, Rivera was given $200 to purchase cocaine from Graham. Rivera drove himself to the mobile home park where the transaction would take place, and the police followed him. Rivera purchased the cocaine and drove back to the Gang Task Force office, where he gave Smith a small baggie of suspected cocaine.

On cross-examination by Graham's counsel, Rivera testified that at the time of the incidents in question, he was dating Graham's wife's cousin and was close friends with Graham, which was the reason that he thought he was approached by the police. Rivera recalled that when Smith and his fellow officer came to see him, they specifically requested information about Graham. Rivera admitted that the officers left him a business card and that he called them a few days later and went to Smith's office. Again, according to Rivera, the officers specifically mentioned Graham. Rivera also testified that the officers threatened to file more charges against him if he refused to help them. This testimony contradicted Smith's testimony that no

one ever offered to dismiss or enlarge Rivera's charges to coerce him into participating.[1]

Rivera maintained that after that call, the officers initiated all meetings between them and repeatedly bothered him about Graham. Rivera testified that he had never seen or known Graham to sell drugs, which he told the police; that the police then told him that they needed him to set up Graham and buy drugs from him; and that the police told him what to do and reminded him to move quickly before his court date. Rivera testified that he eventually agreed to help them.

Rivera stated that he called Graham several times and asked to purchase drugs, and Graham told him that he did not sell drugs. Rivera explained that he changed tactics and told Graham that he needed the drugs to sell to make money for his family. At the time, Rivera was 17 years old and lived with his mother and younger brother. According to Rivera, Graham still refused to sell him drugs, but Rivera nevertheless told the police that he was going to buy some ecstasy from Graham, even though the drugs in Graham's possession belonged to Rivera.

Rivera testified that on June 13, 2007, the date of the first transaction, he loaned Graham five dollars to take a cab to Rivera's apartment to do the transaction; that Rivera himself had purchased the drugs and had them at his home and told Graham on the phone call to ask his brother about the location of the pills; and that his brother gave the pills to Graham. Rivera explained that he was deceiving the police and Graham. He needed the police to believe that he was purchasing drugs from Graham so that they would help him with the outstanding charge against him. According to Rivera, Graham believed that he was helping Rivera to make money and holding the money for Rivera while Rivera sold the pills to someone else.

According to Rivera, Smith contacted Rivera to set up another case against Graham. Rivera agreed and proceeded as he had in the first transaction. Rivera testified that he did not want to be involved but wanted help on his gun possession charge. Rivera explained that the third transaction involved cocaine because his ecstasy supplier had been arrested. By that time, Graham was living with Rivera, and Rivera's family was actually having financial problems. Rivera testified that he was under the influence during the third transaction; thus, he only remembered some of what occurred that day. He recalled that he told the officers that he could not help them that day

---

[1] Smith explained that since he was not Rivera's arresting officer, he did not have the ability to lodge additional charges against him.

because he was under the influence and because he did not have a driver's license. Nonetheless, Rivera testified that he drove his mother's van to their office where the police once again fitted him with a "button" camera; that Graham helped him to locate a third party, from whom he was able to purchase the cocaine; that he met Graham and the third party at a trailer park; and that Rivera told the third party and Graham that he was going to sell the cocaine to someone else.

Rivera testified that after the last transaction, he was arrested for his participation in a drive-by shooting, pled guilty to the charge, and was sentenced to 15 years, which he was in the process of serving at the time of the trial. Rivera also pled guilty to the gun charge and was sentenced to serve five years in prison.

On redirect examination, Rivera admitted that he entered a plea that he was a member of a gang on August 14, 2007, in connection with the drive-by shooting; that when he was first approached by the officers, they wanted information on Graham and BOE; that he did tell the officers that Graham was in possession of 60 pills of ecstasy on June 5, 2007; that he handed Graham money and Graham handed him pills during the first and second transactions and cocaine during the last transaction; and that he and Graham were in fact in the same gang at one point. Rivera also testified, however, that it was in order to "make Smith happy" that he told Smith that Graham had a gun to sell; that he never told the officers that Graham was a member of the BOE gang; and that he lied to the officers when he said that Graham called a gang meeting to discuss dividing territories.

At trial, Graham requested a charge on the defense of entrapment, which the trial court denied. Graham contends that this was error.

> As a general rule, in order to raise the defense of entrapment, the defendant must first admit the commission of the crime and then show that he did so because of the unlawful solicitation or inducement of a law enforcement officer. The rationale for this rule is that it is thought to be factually inconsistent and confusing for a defendant to deny that he committed a criminal act and simultaneously to complain that he was entrapped into its commission.[2]

---

[2] (Punctuation omitted.) *St. Jean v. State*, 255 Ga. App. 129, 130 (564 SE2d 534) (2002), citing *Gregoroff v. State*, 248 Ga. 667, 669-670 (285 SE2d 537) (1982). See also *Maldonado v. State*, 284 Ga. App. 26, 30 (4) (643 SE2d 316) (2007).

However, in *Gregoroff*,[3] our Supreme Court stated that

> an exception to the rule that an accused must admit the crime in order to rely on the defense of entrapment has been recognized where the State, rather than the defendant, injects evidence of entrapment into the case and the defendant offers no evidence of entrapment which contradicts his primary defense that he did not commit the crime charged.[4]

In the instant case, Graham did not testify or otherwise present evidence that was inconsistent with his denial of the charged offense. Graham's theory was that because the drugs belonged to Rivera, Graham could not be guilty of the charged offense. Thus, to determine if Graham was entitled to a charge on the defense of entrapment, we must look to the state's evidence to determine if the jury could draw a reasonable inference of entrapment therefrom.[5] We conclude that the state's evidence did not show entrapment.

> Entrapment consists of three distinct elements: (1) the idea for the commission of the crime must originate with the state agent; (2) the crime must be induced by the agent's undue persuasion, incitement, or deceit; and (3) the defendant must not be predisposed to commit the crime.[6]

In the instant case, the state does not contest that the idea for the commission of the crime originated with the state agent. However, the state argues that there was no evidence of undue persuasion by Rivera to induce Graham to commit the crime that he was not predisposed to commit.

Conversely, Graham argues that there was evidence of undue persuasion and deceit because Rivera used his fictional and actual financial distress to convince Graham to sell the drugs to him and was dating Graham's wife's cousin. In support of this argument, Graham cites *Norley v. State*[7] for the proposition that the informant's knowledge of the defendant's financial distress and the informant's personal relationship with the defendant was sufficient to raise entrapment. We note, however, that *Norley* was not decided

---

[3] Supra.

[4] (Citations omitted.) *Gregoroff*, supra at 671.

[5] See *St. Jean*, supra at 130-131 (no charge on entrapment was required although idea of crime originated with state where state offered no evidence of undue persuasion, incitement, or deceit, or that defendant was not predisposed to commit the crime).

[6] (Punctuation omitted.) *Maldonado*, supra, citing *Ellzey v. State*, 272 Ga. App. 253, 256 (1) (612 SE2d 77) (2005). See OCGA § 16-3-25.

[7] 170 Ga. App. 249 (316 SE2d 808) (1984).

based upon evidence of undue persuasion or deceit; rather, it turned on the question of whether the defendant was predisposed to commit the crime and held that the defendant was not entitled to a directed verdict on entrapment.[8] Graham points out that we concluded that the evidence in *Norley* supported a charge on entrapment, but there was no analysis in that case of what evidence supported the charge. We do point out, however, that the defendant in *Norley* acknowledged that he committed the crime and maintained that the informant knew of the defendant's financial distress,[9] unlike the facts in the instant case.

Graham also cites *Robinson v. State*,[10] in which this court held that a charge on entrapment was not required where the defendant participated in the sale to earn some money, but the informant did not know of the defendant's financial distress.[11] We specifically stated therein that "the evidence might have been more persuasive if the CI knew [the defendant] before the crime and was aware of his financial problems."[12] In the instant case, there was no evidence that Graham was induced to participate because he was in financial distress. Instead, Rivera testified that Graham participated to help Rivera make money.

In *Maldonado*,[13] a case in which the CI told the defendant of his own financial stress, specifically that he needed to sell drugs to raise money for his legal defense, we found no evidence of undue persuasion, incitement, or deceit warranting a charge on entrapment.[14] Therefore, we conclude that Rivera's pleas to Graham that he was in financial distress and needed money or that Rivera had a personal relationship with Graham did not constitute inducement or enticement warranting a charge on entrapment.[15]

We held in *Rutledge v. State*[16] that "[t]he predisposition of the

---

[8] Id. at 250 (1).

[9] Id. at 249.

[10] 296 Ga. App. 561 (675 SE2d 298) (2009).

[11] Id. at 564 (1).

[12] Id. We also noted that there was no evidence that the defendant was not predisposed to commit the crime. Id.

[13] Supra.

[14] Id. at 30 (4).

[15] Compare *Ellzey*, supra at 255 (charge warranted where evidence of inducement consisted of defendant's testimony that he thought he was loaning money to the informant and was afraid not to do so because informant might use his knowledge of defendant's prior drug use to interfere in defendant's ongoing child custody dispute); *Griffin v. State*, 154 Ga. App. 261, 264 (3) (267 SE2d 867) (1980) (charge required because evidence of improper incitement existed where government supplied all of the information concerning the contraband, including providing the money for the purchase and directing where and from whom to make the purchase).

[16] 218 Ga. App. 130 (460 SE2d 551) (1995).

defendant against committing the crime is a key element of the defense [of entrapment]."[17] In that case, the defendant testified that the informant tricked him by asking him to pick up a bag that contained the contraband, bring the bag to a certain location, and pretend to sell the drugs to a third party.[18] The defendant further testified that the informant explained that he could not sell the drugs himself because the third party would expect a better deal or free drugs.[19] The defendant denied that he intended to sell drugs and testified that he only held the drugs because the informant told him he would reclaim them and because he was afraid to throw them away.[20] Nonetheless, we concluded that a charge on entrapment was not warranted because "nothing in the evidence show[ed] that [the defendant] was not a willing participant in the offenses."[21] The convoluted facts in *Rutledge* are somewhat similar to those here. As in *Rutledge*,[22] despite Rivera's elaborate version of events, there was nothing in the evidence that showed that Graham was not a willing participant in the offenses. Instead, the recorded transactions showed that Rivera gave Graham money in exchange for pills during the first two transactions and cocaine during the last transaction; that Graham told Rivera he needed to keep $300 to buy more pills during the first transaction; and that Graham demonstrated his knowledge about the drugs when he identified one type of pill that he was selling to Rivera as "green apples." Accordingly, in the absence of evidence that Graham was improperly induced to commit the crime through Rivera's undue persuasion, incitement, or deceit,[23] no charge on entrapment was warranted.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED AUGUST 31, 2010.

*Adam S. Levin*, for appellant.
*Lee Darragh, District Attorney, Lindsay H. Burton, Assistant District Attorney*, for appellee.

---

[17] (Citation omitted.) Id. at 132 (1).
[18] Id. at 131.
[19] Id.
[20] Id.
[21] (Citation omitted.) Id. at 132 (1).
[22] Id.
[23] See *Maldonado*, supra.