## A05A2201. FLORES v. THE STATE.
### (626 SE2d 181)

JOHNSON, Presiding Judge.

Clemente Flores was indicted for the offense of trafficking in methamphetamine. He was tried before a jury, which found him guilty of the offense. The trial judge sentenced Flores to serve 25 years in prison and pay a fine of $1 million. Flores appeals.

1. Flores contends that the trial court erred during voir dire in sustaining the state's objection to the relevance of his asking if any of the prospective jurors had taken a Spanish class. We find no reversible error.

> The single purpose for voir dire is the ascertainment of the impartiality of jurors, their ability to treat the cause on the merits with objectivity and freedom from bias and prior inclination. The control of the pursuit of such determination is within the sound legal discretion of the trial court, and only in the event of manifest abuse will it be upset upon review.[1]

In the instant case, after the court sustained the state's objection to Flores' question about a Spanish class, Flores was allowed to ask the jurors if any of them were biased against him because he is from Mexico and does not speak English. None of the jurors indicated any such bias and the voir dire continued. Given the questions concerning possible bias based on nationality and language that Flores was allowed to ask, we find no manifest abuse of discretion in the trial court's decision to disallow the question about whether any jurors had taken a Spanish class.[2]

2. Flores argues that the trial court erred in refusing to strike for cause a potential juror who indicated during voir dire that one of the officers who was a witness for the state had been a family friend for many years. The argument is without merit.

> Whether to strike a juror for cause lies within the sound discretion of the trial court. Before a juror is excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside

---

[1] (Citations omitted.) *Robles v. State*, 277 Ga. 415, 419 (3) (589 SE2d 566) (2003).

[2] See id.

and decide the case based upon the evidence or the court's charge upon the evidence.[3]

Flores has made no showing that the juror in question held an opinion of his guilt that was so fixed that she could not set it aside and base her verdict on the evidence and the court's charge. Indeed, he has failed to show that the juror had any preconceived opinion about his guilt or innocence. Rather, the record reveals that after indicating she knew a police officer who was a witness for the state, she testified, in response to questioning by the prosecuting attorney, that she could be an impartial juror. While Flores subsequently asked the juror a few questions about the officer, he did not ask her any questions about her proclaimed impartiality.

Considering the juror's uncontradicted testimony that she could be impartial, the mere fact that she knew a witness for the state did not require that she be excused for cause.[4] The trial court therefore did not abuse its discretion in refusing Flores' request that the juror be removed.

3. Flores claims the trial court erred in not granting a directed verdict of acquittal. We disagree.

The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. We view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.[5]

Viewed in the light most favorable to the verdict, the evidence shows that on September 25, 2002, an Atlanta Police Department narcotics task force used a confidential informant to place a telephone call ordering 18 ounces of methamphetamine. The confidential informant arranged to have the drugs delivered to the food court at Lenox Square Mall in Atlanta. A short time after the informant placed the order, police investigators waiting in motor vehicles in the mall

---

[3] (Citations omitted.) *Somchith v. State*, 272 Ga. 261, 262 (2) (527 SE2d 546) (2000).

[4] See id.; *Heath v. State*, 269 Ga. App. 872, 872-873 (2) (605 SE2d 427) (2004).

[5] (Footnote omitted.) *Richardson v. State*, 275 Ga. App. 320 (1) (620 SE2d 522) (2005).

parking lot saw Flores arrive at the entrance to the food court in a taxi cab. Flores got out of the cab and went into the food court carrying a cellular telephone.

The confidential informant was not in the food court and instead was still in a vehicle in the parking lot with an investigator. The informant received a call on his cellular telephone. The informant indicated to the caller that he had moved to a different location. Flores came out of the food court, sat on a bench and received a call on his phone. He then got back into the taxi cab that had brought him to the mall.

At that point, investigators approached the cab and told Flores to get out of it. They searched him and found a blue plastic grocery bag stuck in the waistband of his pants. Inside that bag, they found a clear plastic freezer bag containing suspected crystal methamphetamine. The substance was later analyzed at the Georgia Bureau of Investigation crime laboratory, where it was indeed found to be methamphetamine and to weigh 434.72 grams.

Flores was the only defense witness. He admitted that he had taken the bag full of methamphetamine to the mall to deliver it to someone. But he claimed that someone whom he knows as El Gordo had given the bag to him for the delivery and that he had not known what was in the bag.

A person commits the felony offense of trafficking in methamphetamine if he knowingly sells, delivers, brings into this state or possesses 28 grams or more of methamphetamine or any mixture containing methamphetamine.[6] Having reviewed the evidence in the light most favorable to the verdict, we find sufficient evidence from which the jury was authorized to find beyond a reasonable doubt that Flores knowingly possessed more than 28 grams of methamphetamine. Because there is sufficient evidence to support the verdict, the trial court did not err in denying Flores a directed verdict of acquittal.[7]

4. Flores argues that the trial court erred in refusing to give a charge on the defense of entrapment. The argument is without merit.

As a general rule, in order to raise an entrapment defense the defendant must first admit that he committed the crime and then show that he did so because of unlawful inducement by a law enforcement officer.[8] However, if the state's case shows evidence of entrapment and the defendant offers no evidence of entrapment inconsistent with his defense that he did not commit the crime, then

---

[6] OCGA § 16-13-31 (e).

[7] See *Baggs v. State*, 265 Ga. App. 282, 283-284 (1) (593 SE2d 734) (2004).

[8] *St. Jean v. State*, 255 Ga. App. 129, 130 (564 SE2d 534) (2002).

he is not required to admit the commission of the crime in order to be entitled to an entrapment jury charge.[9]

In the instant case, Flores did not admit that he committed the crime of trafficking in methamphetamine. Rather, his defense was that he did not commit the crime because he did not know the package he was delivering contained methamphetamine. Moreover, the state presented no evidence showing entrapment.

"Entrapment consists of three distinct elements: (1) the idea for the commission of the crime must originate with the state agent; (2) the crime must be induced by the agent's undue persuasion, incitement, or deceit; and (3) the defendant must not be predisposed to commit the crime."[10] Although the idea for the crime originated with a state agent, as evidenced by the confidential informant's telephone call placing the order for the illegal drugs, there was no evidence presented by the state of the other two elements needed for an entrapment defense.

On the contrary, the state's evidence that the confidential informant placed a call and a short time later Flores arrived at the designated spot with the methamphetamine shows both an absence of undue persuasion, incitement or deceit by the state and Flores' predisposition to commit the crime. "[A]bsent other circumstances, it is generally held that where an officer simply makes a request, as to purchase contraband, and there is ready compliance, the defense of entrapment is not available."[11] Under the circumstances of the instant case, the trial court did not err in refusing to give a charge on entrapment.[12]

5. Flores asserts that his sentence of 25 years in prison and a $1 million fine constitutes cruel and unusual punishment. Because Flores was in possession of 434.72 grams of methamphetamine, the sentence is mandated by OCGA § 16-13-31 (e) (3), which provides: "If the quantity of methamphetamine . . . is 400 grams or more, the person shall be sentenced to a mandatory minimum term of imprisonment of 25 years and shall pay a fine of $1 million."

"Traditionally, it is the task of the legislature, not the courts, to define crimes and set the range of sentences. The legislature's choice of sentence is insulated from judicial review unless it is wholly irrational or so grossly disproportionate to the severity of the crime that it constitutes cruel and unusual punishment."[13] Given the large

---

[9] *Ellzey v. State*, 272 Ga. App. 253, 256 (1) (612 SE2d 77) (2005).

[10] (Punctuation and footnote omitted.) Id.

[11] (Citation and punctuation omitted.) *Adams v. State*, 207 Ga. App. 119, 120 (1) (427 SE2d 90) (1993).

[12] See *St. Jean*, supra at 130-131.

[13] (Footnote omitted.) *Taylor v. State*, 259 Ga. App. 457, 462 (3) (576 SE2d 916) (2003).

quantity and value of the methamphetamine at issue, we find that the sentence required by the legislature is not wholly irrational or grossly disproportionate to the severity of the crime.

At trial, one of the investigating officers testified that methamphetamine users typically purchase the drug in a "quarter bag," which is a quarter gram. Consequently, more than 430 grams, like Flores possessed, could be distributed to thousands of people and, according to the officer, has a "street value" of at least $25,000.

Because trafficking in methamphetamine is so lucrative, we conclude that the mandatory sentence and fine set by the legislature, while certainly severe, contributes to accepted goals of punishment and deterrence, and is not grossly out of proportion to the severity of the crime, and thus it does not constitute cruel and unusual punishment.[14]

*Judgment affirmed. Ruffin, C. J., and Barnes, J., concur.*

DECIDED JANUARY 11, 2006.

*Charles H. Frier*, for appellant.
*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Assistant District Attorney*, for appellee.

---

[14] See *Wyatt v. State*, 259 Ga. 208, 209 (2) (378 SE2d 690) (1989) (fine under OCGA § 16-13-31 for cocaine trafficking not unconstitutional).