A08A1923. WHITEHEAD v. THE STATE.
(672 SE2d 517)

MIKELL, Judge.

Following a bench trial, Richard Dennis Whitehead was found guilty under OCGA § 16-6-5.1 (b) of nine counts of sexual assault against a person enrolled in a school. He was sentenced to thirty years on each count, twenty years to serve in confinement and ten years on probation, the sentences to be served concurrently. Whitehead appeals the denial of his amended motion for new trial, arguing

---

[10] Id.

[11] See *Schafer*, supra at 469 (2).

[12] See *Mays v. Ed Voyles Chrysler-Plymouth*, 255 Ga. App. 357, 359 (1) (565 SE2d 515) (2002).

that the evidence was insufficient to support the conviction; that he did not knowingly, voluntarily and intelligently waive his right to a jury trial; and that the sentence imposed was cruel and unusual. Finding no error, we affirm.

1. On appellate review of a criminal conviction following a bench trial,

> we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[1]

Whitehead was convicted under OCGA § 16-6-5.1 (b), which provides that a person "commits sexual assault when he . . . engages in sexual contact with another person . . . who is enrolled in a school," and the person accused "has supervisory or disciplinary authority over such other person." Whitehead contends that the evidence presented at trial was insufficient to sustain his conviction under this Code section, because the evidence failed to show that he had "supervisory authority" over the victim in this case. We disagree.

Viewed in the light most favorable to the verdict, the evidence shows that on at least nine occasions from March 23 to April 22, 2007, Whitehead, a 34-year-old teacher at Bainbridge High School, engaged in sexual relations with J. A. P., a 17-year-old student enrolled at that school. At the time, Whitehead was married and the father of three children, the oldest of whom was a teenaged daughter. The sexual contact between Whitehead and J. A. P. included vaginal, oral, and anal intercourse, and took place at the parking lot of a local church and at J. A. P.'s home during her mother's absence. At trial, Whitehead admitted to having a sexual relationship with J. A. P.

During the time their sexual encounters were taking place, J. A. P. was not enrolled in any classes taught by Whitehead, although she had been in a class taught by him earlier in that academic year, during the fall of 2006. However, during the entire academic year of 2006-2007, J. A. P. was a member of the school's Quiz Bowl team, of which Whitehead was faculty advisor. The Quiz Bowl team participated in academic competitions against teams from other schools in

---

[1] (Citation omitted.) *Groves v. State*, 263 Ga. App. 828, 830 (2) (590 SE2d 136) (2003), citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

the area. Whitehead supervised the Quiz Bowl team's weekly practices, took the team members to Quiz Bowl tournaments, and was in charge of the school's Quiz Bowl team members while they were at the tournaments.

Whitehead contends that the evidence did not show that he had "supervisory authority" over J. A. P. at the time the sexual conduct occurred, because the sexual encounters did not occur on school grounds or while either party was attending a school function; that J. A. P. was not a student in a class taught by Whitehead; that during the time that this sexual contact occurred, J. A. P. was an intelligent high school junior with a good academic record, who was free to come and go as she pleased; and that the relationship was consensual and no force was used. Whitehead also notes that he received no extra compensation from the school for serving as teacher advisor to the Quiz Bowl team; and that the students did not receive a grade, credit, or extra credit for their participation on the team.

The trial court, however, acting as finder of fact, found that Whitehead, as the teacher advisor to the school's Quiz Bowl team, had supervisory authority over J. A. P., a Quiz Bowl participant. This finding is supported by the testimony of the principal of Bainbridge High School, Tommy Howell, who testified that Whitehead, as a teacher at the school, had supervisory authority "while on campus" over J. A. P. during the spring of 2007. It is further supported by the testimony of J. A. P. and of Whitehead himself, who both testified that Whitehead was in charge of the students on the Quiz Bowl team at practices and at tournaments.

Whitehead essentially argues that OCGA § 16-6-5.1 (b) only covers sexual contact between a teacher and a student where the student is enrolled in a class taught by the teacher or where the sexual contact occurs on campus or at a school function. However, in *Randolph v. State*,[2] our Supreme Court considered a vagueness challenge to OCGA § 16-6-5.1 (b) by an assistant principal who was charged with sexual contact with a student both before and after classes began for the school year.[3] The Supreme Court ruled that the statute contained a "sufficiently definite warning regarding those persons with whom it was forbidden for [the defendant] to engage in sexual conduct, i.e., *any person who was at the time of the sexual contact registered as a student at the high school* at which [the defendant] worked as an administrator."[4]

---

[2] 269 Ga. 147 (496 SE2d 258) (1998).

[3] Id.

[4] (Emphasis supplied.) Id. at 150 (2). See generally *State v. Eastwood*, 243 Ga. App. 822, 824 (535 SE2d 246) (2000).

A case analogous to the one at bar came before this Court in *Groves*.[5] There, a high school teacher had sexual contact with a student who took part in the school's "teacher cadet" program, which the teacher supervised;[6] therefore, the student was one over whom the teacher had "direct supervisory control,"[7] and the teacher's conviction under this Code section was affirmed.[8] Similarly, in the case at bar, Whitehead had "direct supervisory control" of J. A. P. by reason of his status as teacher advisor to the Quiz Bowl team of which she was a member.

Whitehead's reliance on *Palmer v. State*[9] is misplaced. In that case, the Supreme Court overturned the conviction of a probation officer under OCGA § 16-6-5.1 (b) for sexual contact with a probationer.[10] The Court reasoned that the probationer was not "in the custody of law" within the meaning of the Code section, because she "was free to go about her normal activities" while on probation.[11] *Palmer*, however, concerned events that occurred before the class of victims under OCGA § 16-6-5.1 (b) was enlarged to include persons who are "enrolled in a school."[12] *Palmer* is thus inapposite to the case at hand.

*Wilson v. State*,[13] also cited by Whitehead, is distinguishable from the case at bar. In *Wilson*, this Court examined subsection (c) (1) of OCGA § 16-6-5.1,[14] which contains the same "supervisory or disciplinary authority" language as is found in subsection (b).[15] The evidence in *Wilson* "expressly establishe[d]" that the defendant, a certified nursing assistant at a nursing home, did not have supervisory authority over the patients; instead, his duties were limited to "cleaning up after incontinence and looking after general needs" of

---

[5] Supra.

[6] Id. at 829.

[7] Id. at 831 (2).

[8] Id.

[9] 260 Ga. 330 (393 SE2d 251) (1990).

[10] Id.

[11] Id. at 331.

[12] Ga. L. 1990, p. 1003, § 1. See *Randolph*, supra at 147 (1). In 1991, the class of victims protected under OCGA § 16-6-5.1 (b) was extended to include probationers. Ga. L. 1991, p. 1108, § 1.

[13] 270 Ga. App. 311 (605 SE2d 921) (2004).

[14] OCGA § 16-6-5.1 (c) (1) ("A person commits sexual assault when such person has supervisory or disciplinary authority over another person and such person engages in sexual contact with that other person who is: (A) In the custody of law; or (B) Detained in or is a patient in a hospital or other institution").

[15] *Wilson*, supra at 312-313 (2) (b).

the patients.[16] Thus, Wilson's conviction under OCGA § 16-6-5.1 (c) (1) could not stand.[17]

In contrast to the situation presented in *Wilson*, the evidence presented in the case at bar showed that Whitehead had supervisory authority over J. A. P. at the time of their sexual encounters.[18] We conclude that the evidence presented was sufficient to support Whitehead's convictions under OCGA § 16-6-5.1 (b).[19]

2. Whitehead contends that his waiver of the right to a jury trial was invalid because he was never informed that the crimes with which he was charged carried a ten-year minimum sentence.[20] The record does not support this contention. At the hearing on White-head's request to waive a trial by jury, the judge specifically confirmed that Whitehead understood that the minimum sentence for sexual assault was ten years. Moreover, Whitehead submitted a written waiver of jury trial to the trial court, following questioning by his counsel confirming that he and his counsel had discussed the possibility of waiving a jury trial. The trial court then spoke with Whitehead, confirming that he understood that he had a right to trial by jury; and that by waiving that right, the issues would be determined by a judge, rather than by a jury; and that, in consultation with counsel, Whitehead elected to waive a jury trial and to proceed before the trial court sitting alone.

On appellate review of a trial court's determination that a defendant validly waived the right to a jury trial, we will affirm unless that determination was clearly erroneous.[21] In light of the colloquy summarized above, the trial court's determination that Whitehead validly waived his right to a jury trial was not clearly erroneous.[22] It follows that the trial court did not err in denying Whitehead's motion for new trial on this ground.

Whitehead's reliance on Uniform Superior Court Rule (USCR) 33.8 (C) (4)[23] is misplaced. USCR 33.8 applies to a defendant's plea of

---

[16] Id. at 313 (2) (b).

[17] Id.

[18] See *Randolph*, supra at 150 (2).

[19] See *Groves*, supra.

[20] See OCGA § 16-6-5.1 (b), which provides that "[a] person convicted of sexual assault shall be punished by imprisonment for not less than ten nor more than 30 years" and is subject to the provisions of OCGA § 17-10-6.2. Under OCGA § 17-10-6.2 (b), "[n]o portion of the mandatory minimum sentence imposed shall be suspended, stayed, probated, deferred, or withheld by the sentencing court."

[21] *Edwards v. State*, 285 Ga. App. 227, 229 (2) (645 SE2d 699) (2007). Accord *Defrancisco v. State*, 289 Ga. App. 115 (656 SE2d 238) (2008).

[22] See *Defrancisco*, supra at 119-120 (2).

[23] USCR 33.8 ("The judge should not accept a plea of guilty or nolo contendere from a defendant without first: ... (C) Informing the defendant on the record: ... (4) of the mandatory minimum sentence, if any, on the charge").

guilty or nolo contendere, not to the waiver of jury trial, as in the case at bar.

3. Whitehead contends that given the circumstances of this case, the sentence imposed is unconstitutionally cruel and unusual under the standard set forth in *Fleming v. Zant*,[24] because it "(1) makes no measurable contribution to accepted goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime."[25] Whitehead notes that he has no prior criminal convictions; that the sexual assaults committed did not occur on school property; that the crimes did not occur during any school function; and that the sexual conduct with J. A. P. was consensual. We find no error in the court's sentence.

The sentence imposed upon Whitehead was within the limit imposed by the statute, and thus it will not be set aside on the ground that the sentence imposed is excessive and the punishment cruel and unusual.[26]

> Traditionally, it is the task of the legislature, not the courts, to define crimes and set the range of sentences. The legislature's choice of sentence is insulated from judicial review unless it is wholly irrational or so grossly disproportionate to the severity of the crime that it constitutes cruel and unusual punishment.[27]

In the case at bar, Whitehead, a 34-year-old man, was a teacher admired by his 17-year-old victim; he was a role model for this student, whose father had been killed in an accident a year earlier; he was a married man with three children, the oldest being a 15-year-old daughter; yet he told his victim that he loved her and that he wanted to marry her, all the while engaging her in a relationship that he knew to be criminal (as to himself) and destructive (as to his victim). Because high school students are vulnerable to sexual assault by teachers they trust, we conclude that the sentence range provided by the legislature, and the sentence imposed by the trial court in this case, contribute to accepted goals of punishment

---

[24] 259 Ga. 687 (386 SE2d 339) (1989).

[25] (Citation and punctuation omitted.) Id. at 689 (3).

[26] See *Curtis v. State*, 102 Ga. App. 790, 800 (9) (118 SE2d 264) (1960). See generally *Dorsey v. State*, 265 Ga. App. 597, 602 (4) (595 SE2d 106) (2004) (trial court "may in its discretion impose any sentence prescribed by law for the offense") (footnote omitted).

[27] (Punctuation and footnote omitted.) *Flores v. State*, 277 Ga. App. 211, 214 (5) (626 SE2d 181) (2006) (mandatory minimum 25-year prison term and $1,000,000 fine for trafficking in methamphetamine was not unconstitutionally excessive).

and deterrence, and are not grossly out of proportion to the severity of the crime, and thus do not constitute cruel and unusual punishment.[28]

Whitehead relies on *Fleming*[29] and *Humphrey v. Wilson*[30] in asserting that the sentence imposed was unconstitutionally excessive. These cases, however, are not apposite to the case at bar. *Fleming* addressed the issue of whether the execution of a mentally retarded defendant constituted cruel and unusual punishment,[31] where the legislature had, subsequent to defendant's trial, prohibited execution of the mentally retarded.[32] In *Humphrey*, the Supreme Court upheld a habeas court's ruling that seventeen-year-old Genarlow Wilson's ten-year prison sentence for engaging in consensual oral sex with a fifteen-year-old girl constituted cruel and unusual punishment, where the statute under which Wilson had been convicted, OCGA § 16-6-4, had later been amended by the legislature to make that conduct a misdemeanor.[33] In both cases, the Supreme Court "[r]ecogniz[ed] that recent legislative enactments constitute the most objective evidence of a society's evolving standards of decency and of how a society views a particular punishment"[34] and found the punishments imposed before the recent legislative enactment to be cruel and unusual.[35]

In the case at bar, however, the statute under which Whitehead was convicted and sentenced has not been amended by the legislature since his conviction. Thus, the legislature's statement of the society's view of the punishment provided in OCGA § 16-6-5.1 (b) has not changed. Accordingly, the trial court did not err in imposing sentence on Whitehead.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED JANUARY 15, 2009 — ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Gilbert J. Murrah, Robert R. McLendon IV*, for appellant.

---

[28] See *Flores,* supra at 214-215 (5); *Taylor v. State,* 259 Ga. App. 457, 462 (3) (576 SE2d 916) (2003) (mandatory minimum sentence for aggravated sexual battery was not cruel and unusual punishment, even though victim had engaged in sexual intercourse with defendant many times over the decade prior to the sexual encounter at issue).

[29] Supra.

[30] 282 Ga. 520 (652 SE2d 501) (2007).

[31] *Fleming,* supra at 689-690 (3).

[32] Id. at 690 (3).

[33] *Humphrey,* supra at 527-528 (3) (c).

[34] Id. at 527 (3) (c); *Fleming,* supra at 689-690 (3).

[35] *Humphrey,* supra at 530 (3) (c); *Fleming,* supra at 690 (3).

*Joseph K. Mulholland, District Attorney*, for appellee.