**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
**_physically received_ in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 16, 2015**

# In the Court of Appeals of Georgia

A15A0905. MORROW v. THE STATE.

BRANCH, Judge.

Robert Leslie Morrow was tried by a Cherokee County jury and convicted of one count of sexual assault in violation of OCGA § 16-6-5.1 (b) (1).[1] He now appeals from the denial of his motion for a new trial, asserting that because he was employed as a paraprofessional, and not a teacher, the statute did not apply to him and the trial court therefore erred in denying his motion to quash the indictment; that the evidence was insufficient to sustain his conviction because it failed to show either that he was a teacher or that he had supervisory or disciplinary authority over the alleged victim;

---

[1] As discussed more fully below, that statutory provision defines sexual assault as including sexual contact between a teacher and a student enrolled at the school where the teacher is employed and over whom the teacher has "supervisory or disciplinary authority."

and that the trial court erred in admitting similar transaction evidence as to his relationship with the alleged victim. Morrow also challenges that portion of his probated sentence which imposed a waiver of his Fourth Amendment rights. Finding that the State failed to prove that Morrow had supervisory or disciplinary authority over the victim, we agree that the statute did not apply to him and we therefore reverse his conviction.

On appeal from a criminal conviction, the defendant is no longer entitled to a presumption of innocence and we therefore construe the evidence in the light most favorable to the jury's guilty verdict. *Martinez v. State*, 306 Ga. App. 512, 514 (702 SE2d 747) (2010). So viewed, the record shows that in December 2010, Morrow, who was then 27 years old, was employed as a paraprofessional at River Ridge High School, where he also served as a wrestling coach.[2] Morrow was hired as a paraprofessional to attend to the needs of a specific, special-needs child, referred to by the parties as "Pablo." Morrow accompanied Pablo to all of his classes, and during the victim's freshman and sophomore years, she shared both home room and a math class with Pablo. The victim understood that Morrow's job was different from that

---

[2] The record shows that the victim was not a member of the wrestling team and that Morrow never served as her coach.

of a paraprofessional whose job it was to assist a classroom teacher. Specifically, the victim testified that a different paraprofessional assisted her math teacher during her sophomore year, and she characterized that paraprofessional as a "disciplinary figure. He would monitor the classroom when [the teacher] left the room." By contrast, the victim knew that Morrow's sole job was to sit with Pablo, whom the victim described as having "mental issues," and ensure that Pablo did not disrupt the class. Morrow never disciplined or otherwise exercised any authority over the victim. When asked if she believed that Morrow had the authority to discipline her, the victim responded that she did not know.

During December of 2010, the victim was placed in River Ridge's in-school-suspension program ("ISS") for eight days.[3] At some point during that eight-day period, Pablo was also placed in ISS for a single day. Because his job required him to be with Pablo during school hours, Morrow accompanied Pablo to ISS. The victim, who was 16 years old at the time of the charged crime, acknowledged that prior to encountering Morrow in ISS, she had given Morrow her phone number by leaving a note on his car window. On the day that Morrow accompanied Pablo to ISS, the

---

[3] The ISS program had its own teacher, and that teacher also served as the victim's track coach.

victim again gave Morrow her phone number, and he then sent her a text message so she would have his phone number. The two then began exchanging what the victim described as flirtatious text messages.

On the night of Saturday, December 11, 2010, the victim attended the birthday party of a friend and fellow student. During that party, she and Morrow exchanged text messages. The victim first testified that she could not remember who initiated this exchange. When asked about Morrow's statement to police, in which he claimed that the victim texted him from the party, told him she was bored, and wanted to meet, the victim responded that sending such a message "sounds like something I would have done at the time."

Following the exchange of text messages with Morrow, the victim left the party and drove her car to meet Morrow in the parking lot of a nearby grocery store. The victim got into Morrow's car and Morrow drove them to another parking lot where the couple had sexual contact and the victim performed oral sex on Morrow. Morrow then drove the victim back to her car and she returned to the party.

On December 17, 2010, the victim withdrew from River Ridge and enrolled at a high school in Fulton County. In the weeks immediately following her withdrawal from River Ridge, the victim met Morrow on between two and four occasions and during at least one of those encounters the couple had sexual intercourse.

4

Approximately six months after her encounters with Morrow, the victim told her mother about the couple's sexual contact, and the mother took the victim to report the matter to local law enforcement authorities. Following a police investigation, Morrow was arrested and indicted under OCGA § 16-5-5.1 on one count of sexual assault. Prior to trial, Morrow moved to quash the indictment, arguing that because he was a paraprofessional, rather than a teacher, the statute under which he was indicted did not apply to him. Following a hearing, and relying on this Court's decision in *Hart v. State*, 319 Ga. App. 749 (738 SE2d 331) (2013)[4], the trial court denied the motion

[4] In *Hart*, the Court found that the term "teacher," as used in OCGA § 16-6-5.1 (b) (1) included a paraprofessional who had supervisory and disciplinary authority over students. 319 Ga. App. at 350. In reaching this conclusion, the Court acknowledged the rule that the words of statutes must be given their ordinary and logical meaning, and concluded that "[t]he ordinary, logical, and common meaning of the term 'teacher' would include a paraprofessional who taught in a high school classroom." Id. (punctuation omitted). To hold otherwise, the Court reasoned, "would contravene the legislature's intention to criminalize sexual activity between a school administrator or a school employee who teaches and a student at the school." We have some concerns about the reasoning employed in *Hart* because the Court expressly acknowledged, but then declined to apply, the rule that "courts must generally refrain from expanding the scope of penal statutes by implication." 319 Ga. App. at 750, citing *Wood v. State*, 219 Ga. 509, 513 (134 SE2d 8) (1963) (holding that a statute criminalizing certain conduct by an officer of the State did not apply to municipal officers). See also *Fleet Finance, Inc. of Georgia v. Jones*, 263 Ga. 228, 231 (3) (430 SE2d 352) (1993) (criminal statutes "must be construed strictly against criminal liability and, if [a statute] is susceptible to more than one reasonable interpretation, the interpretation most favorable to the party facing criminal liability must be adopted"); *State v. Hammonds*, 325 Ga. App. 815, 817-818 (755 SE2d 214) (2014) (declining to find that a school secretary was an "administrator" under OCGA § 16-6-5.1 (b) (1)). The instant case, however, does not require us to consider whether *Hart* was correctly decided, as we are reversing Morrow's conviction on other grounds.

to quash. The lower court certified its order for immediate review, but this Court denied Morrow's application for an interlocutory appeal. The case proceeded to a jury trial, at which Morrow was found guilty. Following his conviction, Morrow filed a motion for a new trial, which was denied. This appeal followed.

1. The statute under which Morrow was prosecuted provides:

(b) A person who has supervisory or disciplinary authority over another individual commits sexual assault when that person: (1) Is a teacher, principal, assistant principal, or other administrator of any school and engages in sexual contact with such other individual who the actor knew or should have known is enrolled at the same school; provided, however, that such contact shall not be prohibited when the actor is married to such other individual[.]

OCGA § 16-6-5.1.

To convict a person under this statutory provision, therefore, the State must prove both that the defendant was "a teacher, principal, assistant principal, or other administrator" of the school at which the victim enrolled and that the defendant had supervisory or disciplinary authority over the victim. See *Hammonds*, 325 Ga. App. at 818 (to be guilty of sexual assault against a student enrolled at the school where he works, the defendant must have supervisory authority over that student); *Whitehead v. State*, 295 Ga. App. 562, 563 (1) (672 SE2d 517) (2009) (same); *Groves v. State*,

6

263 Ga. App. 828, 830 (2) (590 SE2d 136) (2003) (same). In this context, "supervisory or disciplinary authority" means that the teacher had the power either to direct the student in question, to require the student to comply with some form of directive (whether it be a school rule or an instruction from the defendant), or to take disciplinary action against the student for failure to comply with such a directive. See *Randolph v. State*, 269 Ga. 147, 150 (2) (496 SE2d 258) (1998).

On appeal, Morrow argues that even if he can be considered a teacher under OCGA § 16-6-5.1 (b) (1), the State failed to prove that he had supervisory or disciplinary authority over the victim. We agree. Although the victim testified that she viewed Morrow as "an authority figure," the State introduced no evidence showing that Morrow had any kind of general supervisory or disciplinary authority over students at the school. Moreover, a showing that all teachers at a school, including the accused, have some kind of general authority over students in the school, is insufficient to demonstrate the supervisory or disciplinary authority required to convict a defendant under OCGA § 16-6-5.1. Rather, the statute requires the State to prove that the defendant had some kind of *direct* disciplinary or supervisory authority over the victim. See *Hammonds*, 325 Ga. App. at 818 (even assuming school secretary had some form of "supervisory or disciplinary authority

7

over students at the school in general," the record failed to show that she had such authority over any of the three victims specifically). Compare *Whitehead*, 295 Ga. App. at 564 (1) (State proved that defendant had supervisory authority over victim where evidence showed that defendant served as the faculty advisor to the school's Quiz Bowl team, the victim was a member of that team, and both the defendant and the victim testified that the defendant "was in charge of the students on the Quiz Bowl team at practices and at tournaments"); *Groves*, 263 Ga. App. at 828-829 (teacher had supervisory authority over both victims, where one victim was a student in his class and the other participated in a "teacher cadet" program supervised by the defendant).

Here, the State offered no evidence to show that Morrow had any kind of direct authority over the victim, either as a paraprofessional/teacher or as a wrestling coach. There was no testimony or other evidence showing that Morrow had the authority to give directives to the victim, to enforce school rules against the victim, or even to refer the victim to administrators for discipline as a result of her violation of either the defendant's directives or some other school rule or policy. Furthermore, the victim testified that she understood that Morrow's job was to accompany Pablo to his classes and ensure that Pablo (as opposed to any other student) did not disrupt class. And

8

when asked whether Morrow had any kind of authority over her specifically, the victim replied that she did not know.

Given the State's failure to prove that Morrow had any supervisory or disciplinary authority over the victim, it failed to prove an essential element of the charged crime. Accordingly, we must reverse Morrow's conviction.

2. In light of our holding in Division 1, we need not address Morrow's remaining claims of error.

*Judgment reversed. Andrews, P. J., concurs. Miller, J., concurs in judgment only.*