## S16G0584. THE STATE v. MORROW.
(794 SE2d 37)

BLACKWELL, Justice.

Robert Leslie Morrow was tried by a Cherokee County jury and convicted of sexual assault under OCGA § 16-6-5.1 (b) (1),[1] which provides in pertinent part:

> A person who has supervisory or disciplinary authority over another individual commits sexual assault when that person . . . [i]s a teacher, principal, assistant principal, or other administrator of any school and engages in sexual contact with such other individual who the actor knew or should have known is enrolled at the same school . . . .

Viewed in the light most favorable to the verdict, the evidence presented at trial shows that Morrow had been employed as a paraprofessional at River Ridge High School in Woodstock, where he was assigned to attend to a student with special needs. Morrow accompanied that student to his classes, including a math class in which P. M. also was enrolled as a student. As a result, Morrow and P. M. became acquainted, and in December 2010, they met away from school and had sexual contact. At the time, P. M. was sixteen years of age.[2]

Morrow appealed his conviction, and in *Morrow v. State*, 335 Ga. App. 73 (778 SE2d 848) (2015), the Court of Appeals reversed. The Court of Appeals reasoned that OCGA § 16-6-5.1 (b) (1) requires proof that the accused had "specific[ ]" supervisory or disciplinary authority over the student in question, and because the State failed to show that Morrow had specific authority over P. M., the evidence was insufficient to sustain the conviction. We issued a writ of certiorari to review the decision of the Court of Appeals, and we conclude that the State may carry its burden of proving supervisory or disciplinary authority by evidence of general *or* specific authority. Here, the State came forward with evidence that Morrow had some general supervisory or disciplinary authority over students in P. M.'s math class, and so, the Court of Appeals erred when it reversed his conviction on that ground. We also conclude, however, that the State failed to prove that

---

[1] This case arose in December 2010, and since that time, OCGA § 16-6-5.1 has been amended on three occasions. Paragraph (b) (1), however, has remained unchanged. See Ga. L. 2011, p. 227, § 5; Ga. L. 2015, p. 422, § 5-20; Ga. L. 2016, p. 864, § 16.

[2] After P. M. transferred from River Ridge to another school, she disclosed her sexual relations with Morrow to a River Ridge teacher. In *May v. State*, 295 Ga. 388 (761 SE2d 38) (2014), we held that this teacher had no legal obligation under OCGA § 19-7-5 to report the disclosure of sexual contact.

Morrow was a "teacher, principal, assistant principal, or other administrator of any school," and for that reason, Morrow's conviction cannot stand. Accordingly, we affirm the judgment of the Court of Appeals.

1. To show a violation of OCGA § 16-6-5.1 (b) (1), the State must prove that the accused had "supervisory or disciplinary authority over [a student with whom the accused had sexual contact]." As the phrase is used in OCGA § 16-6-5.1 (b) (1), "supervisory or disciplinary authority" means "the power to direct and to enforce compliance [with school rules and policies]." *Randolph v. State*, 269 Ga. 147, 150 (2) (496 SE2d 258) (1998). And as the precedents illustrate, "supervisory or disciplinary authority" may be general or specific. The State certainly may carry its burden of proving "supervisory or disciplinary authority" by evidence that the accused had specific authority to direct a particular student and to enforce school rules and policies with respect to that particular student. See, e.g., *Whitehead v. State*, 295 Ga. App. 562, 565 (1) (672 SE2d 517) (2009) (defendant had "direct supervisory control" over student, who was a member of Quiz Bowl team to which the defendant was the faculty advisor); *Groves v. State*, 263 Ga. App. 828, 831 (2) (590 SE2d 136) (2003) (defendant had "direct supervisory control" over students, one of whom was enrolled in the defendant's class, and one of whom participated in a "teacher cadet" program that the defendant supervised). Even when an accused is not specifically assigned to attend to a particular student, however, the State may show the requisite "supervisory or disciplinary authority" by proof that the accused had general authority over the student body as a whole or a broad segment of the student body of which the student in question was a part. See, e.g., *Randolph*, 269 Ga. at 150 (2) (defendant had "supervisory or disciplinary authority" over all students in the school by virtue of his duties as assistant principal).

That "supervisory or disciplinary authority" may be either general or specific was acknowledged by the Court of Appeals in *State v. Hammonds*, 325 Ga. App. 815 (755 SE2d 214) (2014). There, the Court of Appeals found that the defendant "lacked the requisite supervisory [or] disciplinary authority over the students at the school in general, and any [specific] supervisory or disciplinary responsibilities she arguably may have had as an assistant cheerleading coach" did not extend to the students in question, who were not members of the cheerleading squad. 325 Ga. App. at 818. In this case, the Court of Appeals appears to have misread *Hammonds*, citing it incorrectly for the proposition that

> a showing that all teachers at a school, including the accused, have some kind of general authority over students in the

> school, is insufficient to demonstrate the supervisory or disciplinary authority required to convict a defendant under OCGA § 16-6-5.1. Rather, the statute requires the State to prove that the defendant had some kind of *direct* disciplinary or supervisory authority over the victim.

*Morrow*, 335 Ga. App. at 77 (1) (citing *Hammonds*).[3]

Here, there was scant evidence that Morrow had the power to direct P. M. and enforce her compliance with school rules and policies, whether generally or specifically. As noted by the Court of Appeals, the evidence shows that Morrow was assigned to accompany a student with special needs "to his classes and ensure that [this student] (as opposed to any other student) did not disrupt class." Id. at 77 (1).[4] But there was at least some evidence from which a rational jury might properly have inferred that Morrow had an occasional and limited power to direct other students (including P. M.) and to enforce their compliance with school rules and policies, at least when the teacher had stepped out of the classroom and no other school employee was present. As a result, we find that sufficient evidence was presented to show that Morrow had supervisory or disciplinary authority over P. M. as required to prove a violation of OCGA § 16-6-5.1 (b).

2. The State failed, however, to prove another essential element of its case. To show a violation of OCGA § 16-6-5.1 (b) (1), the State must prove that the accused was a "teacher, principal, assistant principal, or other administrator of any school." The State asserts that Morrow — who was employed as a paraprofessional — was a "teacher" because he was an educator by virtue of his involvement in the classroom education of students.[5] Our Education Code, however, defines "teacher," "educator," and "paraprofessional" separately and

---

[3] A parenthetical following the citation of *Hammonds* shows how the Court of Appeals in this case misread *Hammonds*. The parenthetical characterizes *Hammonds* as holding that, "even assuming [the defendant] had some form of 'supervisory [or] disciplinary authority over the students at the school in general,' the record failed to show that she had such authority over any of the three victims specifically." *Morrow*, 335 Ga. App. at 77 (1) (citing *Hammonds*). But the cited portion of *Hammonds* actually says that,

> [e]ven if Hammonds could be considered a teacher by virtue of her position as an assistant cheerleading coach, the record still shows that she lacked the requisite supervisory [or] disciplinary authority over the students at the school in general, and any supervisory or disciplinary responsibilities she arguably may have had as an assistant cheerleading coach would have been confined to the members of the junior varsity cheerleading team.

325 Ga. App. at 818.

[4] Morrow also served as a wrestling coach at River Ridge, but there is no suggestion that P. M. had anything to do with the wrestling team.

[5] There is no assertion that Morrow was a "principal, assistant principal, or other administrator."

distinctly,[6] and OCGA § 16-6-5.1 (b) (1) uses only the term "teacher." Moreover, we note that OCGA § 16-6-5.1 (b) (1) separately and distinctly identifies "teacher[s], principal[s], assistant principal[s], [and] other administrator[s]" as persons to whom the statute applies, but it says nothing of "assistant teachers," "paraprofessionals," "other educators," or "other school employees." The degree of specificity in the statutory identification of school administrators to whom the statute applies suggests that the statute does not use "teacher" in a generic or unusually broad sense. We note as well that other paragraphs of OCGA § 16-6-5.1 (b) concern sexual assaults in other custodial settings, and those paragraphs identify the persons to whom the statute applies far more broadly. See OCGA § 16-6-5.1 (b) (2) (any "employee or agent of any [probation or parole office]"); (b) (3) (any "employee or agent of a law enforcement agency"); (b) (4) (any "employee or agent of a hospital"). As used in OCGA § 16-6-5.1 (b) (1), "teacher" means a teacher, and it does not mean a paraprofessional or other educator.[7]

The State acknowledges that Morrow did not do the sorts of things that teachers typically do. In particular, there is no evidence that Morrow assigned class work, homework or any other tasks, gave lectures, taught lessons, graded work, administered tests, attended faculty meetings, or reported to school on teacher workdays. Nor did Morrow devote any meaningful portion of his time to the instruction of students. At most, the evidence shows that Morrow occasionally answered questions posed by students with special needs or students with limited proficiency in English, questions that could have been answered by almost any layperson. That is not enough to render Morrow a "teacher" for the purposes of OCGA § 16-6-5.1 (b) (1). Moreover, River Ridge is a public school, and any teacher at a public school generally is required to be certified as such by the Georgia Professional Standards Commission. See OCGA § 20-2-942 (a) (4). Someone without a teaching certificate is legally proscribed from being employed as a teacher at River Ridge,[8] and it is undisputed that Morrow had no teaching certificate. For these reasons, the State failed to prove that Morrow was a person to whom OCGA § 16-6-5.1

---

[6] See, e.g., OCGA §§ 20-2-204 (a) (1); 20-2-211.1 (a) (2); 20-2-942 (a) (4).

[7] To the extent that the Court of Appeals held in *Hart v. State*, 319 Ga. App. 749 (738 SE2d 331) (2013), that a paraprofessional is a "teacher" for purposes of OCGA § 16-6-5.1 (b) (1), we overrule that decision.

[8] Georgia law permits persons without a teaching certificate to be employed as "substitutes for teachers who are absent" if there are no persons with a teaching certificate available to substitute. OCGA § 20-2-216. We express no opinion about whether a substitute without a teaching certificate is a "teacher" for the purposes of OCGA § 16-6-5.1 (b) (1). That question is not presented in this case.

(b) (1) applies, and his conviction must be set aside.[9] On that ground, we affirm the judgment of the Court of Appeals.

*Judgment affirmed. Thompson, C. J., Hines, P. J., Benham, Hunstein, and Nahmias, JJ., and Chief Judge Willie E. Lockette concur. Melton, J., not participating.*

DECIDED NOVEMBER 21, 2016 —
RECONSIDERATION DENIED DECEMBER 8, 2016.

*Shannon G. Wallace, District Attorney, Cliff Head, Wallace W. Rogers, Jr., Assistant District Attorneys,* for appellant.
*T. Bryan Lumpkin,* for appellee.

---

[9] If the General Assembly desires to expand the scope of OCGA § 16-6-5.1 (b) (1) to include paraprofessionals (or other school employees such as bus drivers, cafeteria workers, and janitors), it certainly may do so by defining the persons to whom the statute applies in broader terms, just as it has done in paragraphs (b) (2), (b) (3), and (b) (4) of the same Code section. But the statute currently applies only to teachers, principals, assistant principals, and other administrators, and this Court cannot judicially rewrite the statute.