**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**February 1, 2022**

# In the Court of Appeals of Georgia

A21A1694. HUGGINS v. THE STATE.

REESE, Judge

Following a bench trial, Frank Huggins was convicted of sexual assault of a student and sexual battery.[1] On appeal, Huggins argues that: (1) the evidence was insufficient to support his conviction for sexual assault of a student, because he did not work at a "school" and was not a "teacher" under the 2016 version of OCGA § 16-6-5.1; and (2) trial counsel provided ineffective assistance by failing to file a demurrer to the indictment on those grounds. For the reasons set forth infra, we affirm.

---

[1] See OCGA §§ 16-6-5.1 (b) (1) (2016); 16-6-22.1 (b).

Construing the evidence in favor of the trial judge's determination of the defendant's guilt,[2] the record shows the following. In September 2016, Brandi Cammarata enrolled her 16-year-old daughter, L. S., for on-the-road driving lessons offered through Lanier Technical College. L. S. was a student at Flowery Branch High School and had already completed 30 hours of online driving classes. On September 8, 2016, L. S. received her driver's license in the morning, and was scheduled for her on-the-road driving lesson that afternoon. Even though L. S. had already obtained her license, Cammarata insisted L. S. have on-the-road lessons before driving on her own.

Cammarata and L. S. went to the Cumming campus of Lanier Technical College. Huggins arrived as L. S.'s driving instructor in a vehicle marked with Lanier Technical College's logo. Cammarata drove home while L. S. began her lesson with Huggins. The driving lesson vehicle was equipped with an in-car camera, which recorded the driving lesson with both sound and video. The video of the lesson was admitted into evidence, and the trial court watched the video in its entirety.

During the lesson, Huggins repeatedly touched L. S.'s upper thigh. After watching the video, L. S. counted 17 to 20 times where Huggins had touched her

_____

[2] See *Turnbull v. State*, 317 Ga. App. 719, 723 (1) (732 SE2d 786) (2012).

2

thigh. They drove to Huggins's house, and L. S. texted her mother and her boyfriend for help. L. S. was able to leave the car and spoke to Cammarata on the phone while in Huggins's driveway. L. S. cried when talking to her mother. After the call, she told Huggins that her mother was waiting for her back at the college, and the two drove back to the campus.

At trial, Timothy McDonald testified that he was an executive vice president at Lanier Technical College and oversaw the driving education program. Funding for the program was provided by Joshua's Law.[3] Drivers must be between 15 and 18 to enroll in the college's driving class. The program consisted of thirty hours of classroom instruction and six hours of behind the wheel, and drivers could participate in either part of the program or both.

The college was required to go through training by the Governor's Office of Highway Safety to become an authorized training center. The college owned and maintained the vehicles used for the driving program. For the classroom portion of the program, while the college set the curriculum and final exam, the instructors had discretion in how they ran the class, including whether or not to give intermediate tests and quizzes. For the driving portion of the program, the college provided a list

_____

[3] See Ga. L. 2005, p. 1461, § 2; OCGA § 15-21-170 et seq.

3

of maneuvers that a driver should be able to complete, and the instructor decided whether the driver met these criteria. The major duties for a driving instructor listed in the job description included "assess[ing] the student's skills, knowledge and/or abilities," "providing feedback to students and administration," "instruct[ing] students," "manag[ing] student behavior," and "prepar[ing] teach[ing] materials."

Joan Lee, the director of continuing education at Lanier Technical College, testified that she ran the driver's education course at the college. The instructors were employees of the college, had to go through a training certification to become a driving instructor, and had access to their students' information in the college database. Lee testified that Huggins was one of the college's main instructors, teaching at least half of the classes. She referred to Huggins as the "lead instructor" and testified that he had helped train the other instructors at the college. Instructors followed the curriculum provided by the Governor's Office of Highway Safety, but they had discretion to add to the curriculum.

The trial court found Huggins guilty of sexual assault of a student and sexual battery. The trial court denied Huggins's motion for new trial, and this appeal followed.

"The interpretation of a statute is a question of law, which is reviewed de novo on appeal."[4] "[U]nless clearly erroneous, this Court will uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed de novo."[5] With these guiding principles in mind, we now turn to Huggins's claims of error.

1. (a) Huggins argues that Lanier Technical College is not a "school" under the 2016 version of OCGA § 16-6-5.1, and thus the evidence at trial was insufficient to sustain his conviction for sexual assault of a student.

In 2016, OCGA § 16-6-5.1 provided:

A person who has supervisory or disciplinary authority over another individual commits sexual assault when that person:
(1) Is a teacher, principal, assistant principal, or other administrator of any school and engages in sexual contact with such other individual who the actor knew or should have known is enrolled at the same school[.][6]

---

[4] *State v. Rich*, 348 Ga. App. 467, 468 (823 SE2d 563) (2019) (citation and punctuation omitted).

[5] *Johnson v. State*, 361 Ga. App. 43, 54 (4) (861 SE2d 660) (2021) (punctuation and footnote omitted).

[6] OCGA § 16-6-5.1 (b) (1) (2016).

"School" was defined under the statute as "any educational program or institution instructing children at any level, pre-kindergarten through twelfth grade, or the equivalent thereof if grade divisions are not used."[7]

In analyzing whether the college and its driver's education course was a "school" under the statute,

> we are mindful of the applicable principles of statutory construction and look diligently for the intention of the General Assembly. In so doing, the ordinary signification shall be applied to all words. Where the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly. Criminal statutes are construed strictly against the State, they must be read according to the natural and obvious import of their language, and their operation should not be limited or extended by application of subtle and forced interpretations.[8]

Applying the definition of "school" under OCGA § 16-6-5.1 is an issue of first impression for this Court. Nevertheless, even under a strict construction of the statute,

---

[7] OCGA § 16-6-5.1 (a) (5) (2016). The definition of school under the 2021 version of the statute does not include educational programs, defining school as: "any educational institution, public or private, providing elementary or secondary education to children at any level, kindergarten through twelfth grade, or the equivalent thereof if grade divisions are not used, including extracurricular programs of such institution." OCGA § 16-6-5.1 (a) (7).

[8] *Rich*, 348 Ga. App. at 471.

6

Lanier Technical College and its corresponding driver's education course met the definition of school under the 2016 version of OCGA § 16-6-5.1. Although L. S. attended a separate high school and was not enrolled at the college, the definition of school included "educational program[s],"[9] which encompassed the driver's education course. The college's driver's education course was established pursuant to Joshua's Law, and one of the purposes set out by the General Assembly in passing the law was that "the state should assist in getting more young people into . . . driver education and training programs."[10] And, in approving the curricula for driver's education courses, the State ensures that the courses "educate young drivers about safe driving practices and the traffic laws of this state and . . . train young drivers in the safe operation of motor vehicles."[11] Finally, the 2016 version of OCGA § 16-6-5.1's definition of school included that the institution or program provide education to children "at any level, pre-kindergarten through twelfth grade, or the equivalent thereof if grade divisions are not used."[12] The college's driver's education course

---

[9] OCGA § 16-6-5.1 (a) (5) (2016).

[10] See Ga. L. 2005, p. 1461 § 2.

[11] OCGA § 40-5-10 (a).

[12] OCGA § 16-6-5.1 (a) (5) (2016).

7

satisfied this requirement because the course was limited to drivers between the ages of 15 and 18.

For these reasons, the trial court did not err in finding that Lanier Technical College and its corresponding driver's education course met the definition of school under OCGA § 16-6-5.1 (2016).

(b) Huggins argues that he was not a "teacher" under OCGA § 16-6-5.1.

OCGA § 16-6-5.1 (2016) did not define "teacher" and only stated that the offense applied to "a teacher, principal, assistant principal, or other administrator of any school[.]"[13] There are two cases in which our Court and the Supreme Court of Georgia have interpreted the term "teacher" as used in OCGA § 16-6-5.1 (2016). In those cases, the courts held that a paraprofessional and a daily substitute did not meet the definition of teacher under the statute.[14]

In *State v. Morrow*, the Supreme Court held that a paraprofessional was not a teacher under the statute, noting that "[t]he degree of specificity in the statutory

_____

[13] OCGA § 16-6-5.1 (b) (1) (2016). Under the 2021 version of the statute, the term teacher is no longer used, instead applying the offense to "employee[s]" of schools. See OCGA § 16-6-5.1 (b)-(c).

[14] See *State v. Morrow*, 300 Ga. 403, 406-407 (2) (794 SE2d 37) (2016); *Rich*, 348 Ga. App. at 474.

identification of school administrators to whom the statute applies suggests that the statute does not use 'teacher' in a generic or unusually broad sense."[15] The Court summarized the facts showing that the defendant was not a teacher under the statute:

> The State acknowledges that Morrow did not do the sorts of things that teachers typically do. In particular, there is no evidence that Morrow assigned class work, homework or any other tasks, gave lectures, taught lessons, graded work, administered tests, attended faculty meetings, or reported to school on teacher workdays. Nor did Morrow devote any meaningful portion of his time to the instruction of students. At most, the evidence shows that Morrow occasionally answered questions posed by students with special needs or students with limited proficiency in English, questions that could have been answered by almost any layperson. [Moreover,] it is undisputed that Morrow had no teaching certificate.[16]

In *State v. Rich*, in which we held that a daily substitute was not a teacher under the statute, we looked to the dictionary definition of teacher to help inform our

---

[15] *Morrow*, 300 Ga. at 406 (2).

[16] Id.

analysis.[17] We defined teacher as "one that teaches or instructs, especially one whose occupation is to instruct."[18] We summarized the following facts about the defendant:

> Although a substitute may in fact be hired to teach a class, in this case Rich was not tasked with teaching classes, instructing classes, or developing lessons for the students. Rather, her duties comprised monitoring students, assisting them with completing their lesson plans or study guide packets as previously assigned by their regular teacher, and, answering their questions while they worked if her knowledge of the material enabled her to do so. As the principal testified, a daily substitute like Rich is a facilitator assisting those students as that period goes on. . . . She was not expected to prepare for class, administer any state-mandated tests, grade or evaluate students' work, answer students' questions after class, or participate in after-school programs. . . . Rich did not hold a teaching certificate; was not on contract as a teacher; did not actually teach or instruct classes; and had considerably fewer obligations than the teacher for whom she substituted[.]"[19]

In this case, by contrast, Huggins did "the sorts of things that teachers typically do."[20] He instructed students in the classroom and on the road, was expected to know

---

[17] *Rich*, 348 Ga. App. at 472.

[18] Id. (punctuation omitted).

[19] Id. at 472-473 (punctuation and footnote omitted).

[20] *Rich*, 348 Ga. App. at 472 (citation and punctuation omitted).

the subject material, graded tests, evaluated his students' driving performance, had discretion when instructing the students, trained other instructors, and was a certified driving instructor. Accordingly, the trial court did not err in finding that Huggins was a teacher under the 2016 version of OCGA § 16-6-5.1.

Huggins briefly contends that he had no supervisory or disciplinary authority over L. S. and was "simply the passenger in the vehicle with her[.]" We are not persuaded. As the phrase is used in OCGA § 16-6-5.1 (b) (1), "supervisory or disciplinary authority" means "the power to direct and to enforce compliance."[21] Here, Huggins's job description included managing student behavior; he was in the car with L. S. in a specialized driving instruction vehicle; and he instructed L. S. on driving and corrected her behavior while on the road. Thus, Huggins had supervisory authority over L. S. during the driving lesson.[22]

---

[21] *Randolph v. State*, 269 Ga. 147, 150 (2) (496 SE2d 258) (1998).

[22] See *Morrow*, 300 Ga. at 405 (1) (holding that the paraprofessional did have supervisory or disciplinary authority over the victim because of occasional limited control to direct the victim to comply with school rules and procedures, although ultimately concluding that the paraprofessional was not a teacher under the statute); *Whitehead v. State*, 295 Ga. App. 562, 565 (1) (672 SE2d 517) (2009) (holding that a faculty advisor to a Quiz Bowl team had direct supervisory control over a student who was a member of the team), reversed after remand on other grounds by *Whitehead v. State*, 300 Ga. App. 504 (685 SE2d 770) (2009).

2. Huggins argues that trial counsel provided ineffective assistance by failing to file a demurrer or motion to quash the indictment on the bases set out in Division 1 above.

> To evaluate [Huggins's] claim of ineffective assistance of counsel, we apply the two-pronged test established in *Strickland v. Washington*,[23] which requires him to show that his trial counsel's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. Importantly, should a defendant fail to meet his burden on one prong of this two-prong test, we need not review the other prong.[24]

"Failure to pursue a meritless motion does not amount to ineffective assistance."[25] Putting aside that the trial court considered the issues presented in Division 1, given our disposition of the issues above, counsel was not ineffective for failing to pursue a meritless motion.

*Judgment affirmed. Doyle, P. J., and Brown, J., concur.*

---

[23] 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

[24] *Hall v. State*, 361 Ga. App. 568, 573-574 (3) (865 SE2d 183) (2021) (punctuation and additional footnote omitted).

[25] *Murray v. State*, 306 Ga. App. 106, 108 (701 SE2d 579) (2010).